Douglas Henry HEGAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–97–01109–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 10, 1999.

Norbert C. Mahnke, for Appellant.

William D. Ballard, Bryan, for State.

Panel consists of Chief Justice SCHNEIDER, and Justices O'CONNOR and TAFT.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Douglas Henry Hegar, of misdemeanor theft by check. The trial court sentenced appellant to 45 days in jail. We address: (1) error in replacement of a disabled juror; (2) admissibility of business records; (3) admissibility of extraneous offenses; (4) factual sufficiency of the evidence to prove identity of the stolen property and lack of consent; and (5) validity of the punishment verdict form. We affirm.

## Facts

Appellant bought 33 1 × 4's and some sheeted metal from McCoy's in Bryan, Texas. He paid with a check in the amount of $143.55, drawn on his checking account at the First National Bank of Anderson. Appellant did not have sufficient funds in his account to cover the check.

## Disabled Juror

In issue one, appellant argues that the trial court erred by replacing a disabled juror with the next available prospective juror from the list, after the jury was sworn, instead of proceeding with eleven jurors, as required by articles 36.29 and 36.30 of the Code of Criminal Procedure.

## A. Facts

After voir dire, the parties exercised their peremptory strikes and a jury of 12 was seated, including a juror named Medina. The trial court released the remainder of the venire from the instructions previously given. The jury was sworn. The trial court gave the jurors additional instructions, excused them for a lunch recess, and told them to return at 1:30 p.m.

During the recess, Medina told the trial court she was not feeling well because she had been in a very bad car accident the day before. She said she did not think she could concentrate and sit through the trial.[1] Counsel for the State and the appellant were present when Medina spoke to

---

1. Medina had already informed the attorneys during voir dire that she had been in an accident the day before, but neither attorney questioned her further on the matter.

the trial court. Neither party challenged the trial court's decision to discharge Medina because of her disability.

Once the trial court decided to discharge Medina, the trial court asked the parties if they objected to seating the next available juror.[2] Although the prosecutor informed the trial court that she thought there was a provision allowing them to proceed to trial with eleven jurors, the State did not object to seating the next juror.

Defense counsel's initial response was that he did not think replacing a juror after the jury had been sworn was an option. He consulted with appellant, and told him his options were (1) to proceed with 11 jurors, (2) move for a mistrial, or (3) replace a juror, if that was even allowed because he did not think that it was. Appellant moved for a mistrial. The trial court denied the request for a mistrial and issued an instruction that the next available juror, Martinez, return at 1:15 p.m. At that point, appellant objected to the trial court's decision to replace the disabled juror.

2. The relevant portion of the record follows:

Court: Is there any problem with going to the next juror, having the next juror come a little bit early so we can swear him in? It's Richard Martinez.
Defense counsel: Can we even do that now that they've been sworn?
Prosecutor: I believe there is now a provision where we can proceed with 11 jurors.
Defense counsel: Can I consult with my client just a second?
Court: Sure.
(A brief pause in the proceedings)
Defense counsel: Judge, I'm sorry. I would much prefer to do this outside the presence of the jury.
Court: Well, I'm going to have to give her some instructions.
Medina: Do I need to wait outside?
Court: Why don't you step in that room, please?
Defense counsel: Judge, first of all, I want to apologize; and take responsibility for not following through with the questions with Ms. Medina, who obviously indicated that she's not mentally or physically competent to sit as [sic] juror. But despite that, it

Appellant argues the trial court should have proceeded with 11 jurors because the jury had already been sworn. The State claims there is no clear legislative or judicial guidance for proceeding with 11 jurors when one of the jurors becomes disabled after being sworn by the judge in a misdemeanor trial.

### B. Error

Although the Code of Criminal Procedure does not address the situation in which a juror becomes disabled after being sworn in a *misdemeanor* trial, it does address the situation where a juror becomes disabled after being sworn during a *felony* trial. Article 36.29(a) states that, in a felony case, a jury of 11 may return a verdict if a juror becomes disabled. Tex. Code Crim. P. Ann. art. 36.29(a) (Vernon Supp.1999). There are no statutory provisions that allow a venire member who has been released from the trial court's instructions to sit in the disabled juror's place after the jury has been sworn. Article 36.30 of the Code allows a jury of nine to return a verdict in a misdemeanor case in district court. It is titled "Discharging

wasn't brought to our attention sufficiently for me to make that judgment call prior to making our strikes. I've discussed the available options with Mr. Hegar, which include proceeding with only 11 jurors, calling the next available person on the strike list back into court, if that could even be done, or requesting a mistrial because of this procedural problem. And he's indicated to me that he would like to request a mistrial. So I would do so.
Court: State?
Prosecutor: State is not opposed to the Court's suggestion of calling the next available juror, Mr. Martinez, on the list. He was not struck by either myself or [defense counsel]. And I do not find him an objectionable juror, or if the Court chooses to proceed with 11 jurors in the case. State would oppose the granting of a mistrial at this time.
Court: Court denies the request for the mistrial. Call Mr. Martinez and have him report at 1:15, please.
Defense counsel: Judge, if the record is not clear, that's still our objection.
Court: The record is clear on that point. Your objection was overruled.

jury in misdemeanor," and it states: "If nine of the jury can be kept together in a misdemeanor case in the district court, they shall not be discharged. If more than three of the twelve are discharged, the entire jury shall be discharged." TEX. CODE CRIM. P. ANN. art. 36.30 (VERNON 1981).

Unlike article 36.30, there is case law interpreting article 36.29(a). *See, e.g., Gentry v. State,* 881 S.W.2d 35, 43 (Tex. App.—Dallas 1994, pet. ref'd) (holding harmless error where trial court replaced disabled juror *before* jury was sworn because article 36.29(a) did not apply); *Strickland v. State,* 741 S.W.2d 551, 553 (Tex.App.—Dallas 1987, no pet.) (holding trial court abused its discretion by not considering alternatives to granting a mistrial when juror became disabled and defendant did not consent to mistrial); *Moya v. State,* 691 S.W.2d 63, 65 (Tex.App.—San Antonio 1985, no pet.) (stating more desirable procedure is to proceed with 11 jurors); *Williams v. State,* 631 S.W.2d 955 (Tex.App.—Austin 1982, no pet.) (holding trial court did not err by replacing disabled juror *before* the jury was sworn, because article 36.29 does not apply until *after* the jury was sworn). We find these cases useful in determining what procedure to follow when a juror is disabled after being sworn in a misdemeanor trial.

The State does not provide us with any reason why the procedure applied under article 36.29(a) should not also apply to a misdemeanor case. Article 36.30 presumes there are situations where only nine jurors may be available to render a verdict in a misdemeanor trial, although the statute does not define or limit those situations. At a minimum, article 36.30 must accommodate a disabled juror situation such as this one. Because article 36.30 allows a jury of nine to render a verdict in a misdemeanor trial in district court, we do not hesitate to follow the more restrictive procedure of article 36.29.

Article 36.29 contemplates that a jury in a felony case must begin with 12 members. *Maten v. State,* 962 S.W.2d 226, 227 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd). If a juror becomes disabled after the jury is impaneled and sworn, article 36.29(a) gives the remaining 11 jurors the power to render the verdict. *Id.* When article 36.29 applies, the options available to a defendant are (1) to discharge the juror and continue with 11 jurors, or (2) to move for a mistrial. *Carrillo v. State,* 597 S.W.2d 769, 771 (Tex.Crim. App.1980). The trial court errs if it does not give a defendant the opportunity to choose between continuing with 11 jurors or seeking a mistrial. *Id.; Strickland,* 741 S.W.2d at 553; *Moya,* 691 S.W.2d at 65. It is within the trial court's sound discretion to consider less drastic alternatives to a mistrial. *Strickland,* 741 S.W.2d at 552–53.

The trial court did not give appellant the option of proceeding with 11 jurors, and it denied appellant's request for a mistrial. Although defense counsel objected to replacing the disabled juror, and both the prosecutor and defense counsel indicated that proceeding with 11 jurors was appropriate, the trial court did not consider the option and proceeded to replace the disabled juror. The trial court did not give adequate consideration to appellant's right to have his guilt or innocence decided by the first jury sworn in as the trier of fact. The trial court should have proceeded with 11 jurors.

We hold the trial court erred by replacing the disabled juror.

## C. Harm

Appellant argues that replacing the disabled juror with a venire member who was released from the trial court's instructions requires a presumption of harm, because the new juror was allowed to talk freely about the case to anyone he wanted once he was released, and because appellant did not have the opportunity to question the new juror regarding what happened after

he was released. Appellant argues that articles 36.29 and 36.30 promote the policy of preserving the jury's impartiality, because it is more prudent for a jury of less than 12 to render a verdict than it is to insert a new panel member into the jury who may have become tainted after the original jury was sworn and released from the trial court's instructions. The State argues that appellant is required to show harm, relying on *Gentry v. State*, 881 S.W.2d 35 (Tex.App.—Dallas 1994, pet. ref'd). The State contends appellant was not harmed because the replacement juror was not unaccounted for during a long enough period to have become tainted.

### 1. Is This Error Constitutional Error?

 We first examine whether the error is constitutional or other error pursuant to rule 44.2 of the Texas Rules of Appellate Procedure. *See* Tex.R.App. P. 44.2(a), (b) (section (a) addresses constitutional error and section (b) addresses other errors). The United States Constitution does not require that any particular number of jurors constitute a jury; it requires only an impartial jury. U.S. Const. Amend. VI. Appellant implicitly recognizes that, to become a constitutional violation, the trial court's error would have had to produce a biased jury. Thus, appellant's harm argument raises the possibility that the additional juror might have been tainted by outside influences between the time he was released and the time he reported back to the courtroom. In Texas, our Constitution requires a jury of 12 for cases tried in district courts, but provision is made for the Legislature to modify the rule to authorize verdicts by less than 12. *See* Tex. Const. Art. V, § 13. Neither constitution prescribes the manner in which juries are selected; that is left to the legislatures. Therefore, the trial court's improvised solution to the problem

of a disabled juror was not constitutional error.

### 2. Other Error Analysis

 Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that "any other [than constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). It is appellant's burden to show that his substantial rights have been affected. *See Merritt v. State*, 982 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed). Appellant relies upon the possibility that the added juror might have been tainted by his contact with others. As appellant points out, the added juror was not questioned regarding what happened between the time he was released from, and reported back for, duty.[3] Thus, the record does not reflect any taint upon the juror. Furthermore, the added juror in this case was only away for a couple of hours. In *Gentry v. State*, the Dallas Court of Appeals held there was no showing of harm when the added juror had been released overnight. 881 S.W.2d at 42–44. The *Gentry* court employed the old appellate rule 81(b)(2), which is similar to the new appellate rule 44.2(a) for constitutional harmless error analysis. *Gentry* found the error harmless under a more rigorous standard. Thus, it is easier for us to hold the error here harmless under the less rigorous standard of rule 44.2(b) for other errors.

Accordingly, we overrule appellant's first issue.

### Admission of Business Records

In issue two, appellant claims the trial court erred by admitting bank records into evidence on hearsay grounds and for lack of notice under Texas Rules of Evidence Rule 902(10). He claims the State did not lay the proper foundation for admission of

---

3. Once it is determined to be appellant's burden to show harm, his concession that the added juror was not questioned regarding

what happened between the time he was released and reported back weighs against appellant.

a business record. The State argues that appellant waived error, if any, because he did not object on these grounds.

An objection must be timely and specific to preserve error. TEX.R.APP. P. 33.1(a)(1)(A). The objection at trial must correspond with the argument on appeal, and we may not consider grounds not raised before the trial court. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex.Crim.App. 1992); *State v. Romero*, 962 S.W.2d 143, 144 (Tex.App.—Houston [1st Dist.] 1997, no pet.). If the objection at trial does not correspond with the argument on appeal, error is not preserved and the objection is waived. At trial, appellant did not object to the admission of the business records as hearsay. Therefore, error, if any, was waived. *See Romero*, 962 S.W.2d at 144.

Appellant did make a trial objection claiming lack of notice of the bank records. The State responded that the records had been on file. The State also argued that it was unnecessary to provide the notice required by rule 902(10)(a) of the Texas Rules of Evidence because the State was introducing the records through a live witness. The State is correct. The bank records were proved up as business records under rule 803(6) of the Texas Rules of Evidence through a live witness, Charlotte Wilson, a custodian of bank records.

Accordingly, we overrule appellant's issue two.

### Extraneous offenses

In issue three, appellant claims the trial court erred by admitting the bank records because they contained references to other returned checks, which were irrelevant to prove the requisite intent. Appellant also argues the records contained extraneous offenses inviting the jury to find appellant guilty based on character conformity. Finally, appellant contends the State did not give the requested notice required by rule 404(b). The State argues that returned checks are not illegal acts or wrongs so as to be extraneous offenses. Even if this evidence showed extraneous offenses, the State claims section 31.03(c)(1) of the Texas Penal Code authorized its admission. The State also points out that any unfair prejudice was alleviated by the trial court's instruction limiting the jury's consideration of the extraneous conduct to the jury's determination of appellant's intent. The bank records in question were contained in State's Exhibit 7, appellant's bank statements for the months of January (containing two overdraft charges), February (containing one overdraft charge and four returned check charges), and March (containing two returned check charges), 1997. The charged offense occurred on February 2, 1997.

### A. Relevance of Other Returned Checks

We first address appellant's contention that the extraneous transactions were irrelevant to prove intent. Because guilty intent cannot be inferred from the mere act of giving a check in payment for goods, or from other direct evidence, evidence of extraneous similar transactions when the defendant gave insufficient checks in payment for goods is relevant. *See Ali v. State*, 742 S.W.2d 749, 753 (Tex. App.—Dallas 1987, pet. ref'd). Therefore, we reject appellant's first argument.

### B. Not Crimes or Wrongs

We next address the State's claim that evidence of other returned checks was admissible because it was not evidence of crimes or wrongs, but mere embarrassments. Rule 404(b) of the Texas Rules of Evidence covers other crimes, wrongs, or *acts*. TEX.R. EVID. 404(b) (emphasis added). Section 31.03(c)(1) of the Texas Penal Code applies to similar *transactions*. TEX. PENAL CODE ANN. § 31.03(c)(1) (Vernon 1994) (emphasis added). The scope of both provisions is broader than crimes. Therefore, we reject the State's first argument.

## C. Section 31.03(c)(1) Admissibility

The State next argues the evidence of other returned checks was admissible pursuant to section 31.03(c)(1) of the Texas Penal Code, which provides:

evidence that the actor has *previously* participated in recent transactions other than, but similar to that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;

TEX. PENAL CODE ANN. § 31.03(c)(1) (Vernon 1994) (emphasis added). We note that section 31.03(c)(1) appears to be limited to recent transactions *prior to* the charged offense. Therefore, only the two overdraft charges for January would be admissible under section 31.03(c)(1). The other seven transactions occurred after the charged offense.

## D. Rule 404(b) Admissibility

 Section 31.03(c)(1), with its requirement that the extraneous transaction precede the charged offense, appears to be more restrictive than well-settled rules of admissibility of extraneous offenses. *See Thomas v. State*, 753 S.W.2d 688, 695 n. 6 (Tex.Crim.App.1988). Under rule 404(b) of the Texas Rules of Evidence, and its common law predecessor, *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972), there has been no such requirement for extraneous offenses generally. Furthermore, we see no logical reason to confine admissibility of extraneous transactions only to those occurring prior to the charged offense. Accordingly, we hold that the seven returned check or overdraft charges that occurred after the charged offense here were also admissible pursuant to rule 404(b).

## E. Lack of Notice

 Appellant raises an additional objection based on the State's failure to provide notice in response to appellant's request pursuant to rule 404(b). At trial, the State claimed it had filed the business records among the papers of the case, as required by rule 902(10)(a) of the Texas Rules of Evidence. The State argued at trial, however, that because the State was presenting a live witness, it was unnecessary to have complied with rule 902(10)(a) because it applies only when a party intends to introduce the records accompanied by an affidavit of custodian.

We find no trial objection by appellant based on the failure of the State to give notice pursuant to rule 404(b). Appellant's position at trial was in opposition to the State's claim it had filed the bank records sufficiently prior to trial to give timely notice under rule 902(10)(a); appellant claimed he did not have a duty to search the court's file daily. Because appellant's final argument does not comport with any of his trial objections, we decline to address it.

## F. Summary

Accordingly, we hold that the trial court did not err in admitting appellant's bank records showing extraneous transactions. We overrule appellant's third issue.

### Sufficiency of the Evidence

 In issue four, appellant claims the State did not present any evidence of a lack of consent or prove that the property taken was "building lumber" as alleged in the indictment. The State argues that there was evidence of lack of consent, and that any variance in the State's indictment and the proof at trial was immaterial. Because appellant complains of the trial court's failure to grant appellant's motion for instructed verdict and because appellant asks only for reversal as relief, we construe appellant's challenge to the evidence as a factual sufficiency attack. We apply the usual standard of review. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996).

 To prove lack of consent, the State relied on the testimony of Karie

Arnold, the alleged owner. She is the cashier who took appellant's check to pay for "some 1 × 4's and some metal roofing." She testified she would not have completed the purchase if she had known the check was not good. The trial court's charge instructed the jury that consent was not effective if induced by force, threat, *deception*, or coercion. A rational jury could have concluded that appellant obtained the building materials by deception when he presented a check without sufficient funds to cover it. Appellant relies on the absence of evidence of ineffective consent, rather than other evidence indicating consent. We conclude the jury's verdict was not so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust.

 In regard to the property taken, appellant claims the State's proof of "lumber or building material" varied from the indictment's allegation of "building lumber." The State points out that counsel for appellant conceded in jury argument that the defense was not quarreling with the fact the property was building lumber. The record also reflects there was substantial testimony regarding the use that appellant was going to make of the materials. Robert Beaubouef, the manager of McCoy's, testified that the 1 × 4's and metal that appellant was buying were to build a barn for one of appellant's customers. When counsel for appellant challenged the use of 1 × 4's as fairly thin to be used on outside construction of a barn, Mr. Beaubouef explained how the 1 × 4's are lapped over the top of rafters or wall construction in order to fasten metal roofing or siding to the barn. Under these circumstances, a rational jury could have concluded that the 1 × 4's were building lumber. Appellant did not bring any evidence that the 1 × 4's were not building lumber. Therefore, the jury's verdict or

guilty was not so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule appellant's fourth issue.

## Verdict Forms

 In issue five, appellant argues the trial court erred by submitting improper verdict forms. He argues that this error resulted in a verdict that was incomplete, uncertain, and speculative. The State responds by arguing that appellant waived any objection to the punishment charge and to the forms of the verdict.[4] We agree with the State that appellant waived error, if any, as to the form of the verdict because he did not object at trial when given the opportunity to do so by the trial court. *See* TEX.R.APP. P. 33.1(a)(1)(A).

We overrule appellant's issue five.

## Conclusion

We affirm the judgment of the trial court.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting.

I disagree with the majority opinion as to its disposition of issue one. I agree that the trial court erred in replacing a disabled juror after the jury was already sworn. However, I would hold this was constitutional structural error warranting reversal. Even if it was not a constitutional error, as the majority holds, I would hold the error affects the appellant's substantial rights.

## Constitutional Error

One of the most valuable rights guaranteed a defendant by the United States Constitution[1] and the Texas Constitution[2] is the right to trial by an impartial jury.

---

4. Alternatively, the State argues the verdict form was correct and, even if the verdict form was incorrect, the jury was properly instructed as to punishment.

1. The Sixth Amendment states, "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.... "

2. Tex. Const. art. 1, § 10.

The value of this right depends upon the impartiality of the jury. The Texas Constitution requires the Legislature to enact procedures for jury selection and standards for juror qualification.[3] When these procedures are followed, we presume a defendant was tried by an impartial jury. Otherwise, the presumption is lost.

Once the jury is sworn, it is a closed class that may not be re-opened or altered. Although the number of jurors serving on the jury may decrease after the jury is sworn, it may not be changed by the addition or replacement of other jurors, unless they are alternate jurors. This is contemplated by the Code of Criminal Procedure with rules designed to avoid the untimely and erroneous addition of someone to the jury: (1) under Articles 36.29 and 36.30, a trial is permitted to proceed with less than 12 jurors, and (2) under Article 33.011, a district judge may impanel up to four alternate jurors, the purpose of which is to replace a juror who becomes disqualified or disabled from serving before the jury retires to consider its verdict. Here, the trial court ignored the assistant district attorney's and defense counsel's statements that the trial could proceed with less than 12 jurors (Article 36.30), and the trial court did not select any alternate jurors that would have avoided the situation entirely (Article 33.011). It is reversible error to deprive a defendant of a lawfully constituted jury. *See Jones v. State*, 982 S.W.2d 386, 394 (Tex.Crim.App. 1998) (stating that erroneous excusal of veniremember is reversible error if it deprived defendant of a lawfully constituted jury).

Under *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997), an appellate court must conduct a harmless error analysis of constitutional errors, unless the error is a structural constitutional error. *See also Forbes v. State*, 976 S.W.2d 749, 752 (Tex.App.—Houston [1st Dist.] 1998, no pet.); Tex.R.App. P. 44.2(a). Structural constitutional errors are automatically reversible error. *Cain*, 947 S.W.2d at 264. An error is considered a structural constitutional error if it affects the framework in which the trial takes place and defies analysis by harmless error standards.[4] *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991); *Cain*, 947 S.W.2d at 264. An error is mere trial error if it occurs during the presentation of evidence, and if the effect on a trial can be measured or compared in the context of the other evidence presented to determine whether its admission was harmless. *Fulminante*, 499 U.S. at 307–308, 111 S.Ct. at 1263–64; *Ex parte Fierro*, 934 S.W.2d 370, 372 (Tex.Crim.App. 1996).

I would hold the error in replacing a disabled juror after the jury was sworn with a juror who had been released was structural error because its effect cannot be measured against the remaining evidence at trial. This error tainted the jury. *See Ross v. Oklahoma*, 487 U.S. 81, 83–85, 108 S.Ct. 2273, 2276–77, 101 L.Ed.2d 80 (1988) (stating trial court's failure to remove biased juror was constitutional error).

The trial court's error is analogous to seating a disqualified juror; once the jury

---

**3.** Article 1, section 15 of the Texas Constitution instructs the Legislature to enact laws that protect the right to a jury trial. It says, "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."

**4.** The United States Supreme Court has recognized the following as examples of structural constitutional error: total deprivation of counsel, a biased judge, the unlawful exclusion of members of the defendant's race from

a grand jury, denial of the right to self representation at trial, and denial of the right to a public trial. *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246 (citations omitted); *Fierro*, 934 S.W.2d at 372. These are structural errors because their effect on a trial cannot be compared or measured against evidence admitted at trial; the entire trial process is tainted by these constitutional errors. *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246; *Fierro*, 934 S.W.2d at 372.

was sworn, the jury was closed to new members and nobody was eligible to be seated as a juror. Therefore, the seating of an ineligible panelist is the equivalent of seating a disqualified juror. That is fundamental to the nature of a defendant's right to a qualified jury. It is automatically reversible error to allow a disqualified juror to serve on the jury if the defendant objects before the verdict is rendered. *See* Tex.Code Crim. P. art. 44.46(1). The appellant objected to replacing the disabled juror. Thus, we should hold the trial court's error in allowing him to serve was automatically reversible error.

The majority finds the error was not constitutional error because the Legislature prescribes the manner in which juries are selected. Thus, the majority concludes any error in the selection of juries cannot be a constitutional error. I disagree. *See Chappell v. State*, 850 S.W.2d 508, 512 (Tex.Crim.App.1993) (finding automatic reversible error where statute allowing only one jury shuffle was violated). Whatever method the Legislature enacts for the selection of jurors, it must meet constitutional standards. Therefore, the failure to observe the Legislature's enactments regarding jury selection can result in constitutional error.

### Substantial Rights

Even if this case is governed by Rule 44.2(b), I would hold the appellant's substantial rights were affected. The Court of Criminal Appeals recently said that a defendant has a substantial right in qualified jurors. *Jones v. State*, 982 S.W.2d 386, 393 (Tex.Crim.App.1998). Thus, the appellant's rights go to those who serve on the jury. *See id.* Here, a disqualified juror served over the appellant's objection, and the appellant was deprived of a lawfully constituted jury. *See id.* at 394.

Under the majority's holding that it was not a constitutional error, the burden shifted to the appellant to show harm. Under the majority's approach, the appellant can never prove he was harmed when a statute

involving the selection of the jury is violated. The majority concludes the record does not reflect any taint upon the juror. Of course it does not; the replacement juror was never questioned by the trial court to determine what happened after he was released and called back to serve, nor was appellant allowed the opportunity to do the same.