Affirmed and Opinion filed March 13, 2003









Affirmed and Opinion filed March 13, 2003.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01187-CR

____________

 

ROBERT LEON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 155th District Court 

Austin County, Texas

Trial Court Cause No. 97R-081

 



 

O P I N I O N








Appellant Robert Leon was charged by indictment with the
felony offense of theft of property with a value of $1,500 or more but less
than $20,000.  Tex. Pen. Code Ann. ' 31.03(a), (e)(4)(A) (Vernon
Supp. 2003).  Appellant pleaded not
guilty and waived his right to trial by jury. 
The trial court found him guilty and assessed punishment at two years= confinement in a state jail
facility, probated for five years, and a $1,000.00 fine.  As a condition of probation, the court
ordered restitution to the complainant and multiple other entities.  In three issues appellant challenges the
legal and factual sufficiency of the evidence and the trial court=s authority to compel appellant to
make restitution to anyone other than the complainant named in the
indictment.  We affirm.




FACTUAL BACKGROUND

On December 2, 1996, Buck Pakebusch, an agent of First
Security DBS (DBS), delivered a drill bit to the American Cascade Drilling
Company at a well site in Austin County.[1]  American Cascade was one of the working
interest owners of the well.  The amount
listed for the bit on the billing ticket, dated December 2, 1996, was
$2,834.43.  The same day, Pakebusch
received check number 3357, dated December 2, 1996, in the amount of $2,834.43
from AMCAS, Inc., which represented the working interest in the well.  On January 2, 1997, Pakebusch delivered
another bit to the site.  The amount listed
on that billing ticket, dated January 2, 1997, was $4,590.38.  The same day, AMCAS, Inc., issued check
number 3361 in the amount of $4,590.38. 
Appellant was the chief executive officer of American Cascade, and his
name appeared on the signature block of both checks.  No one ever returned the bits to DBS, nor
made a complaint regarding the quality of the bits.

The bank returned both checks for insufficient funds.  On February 4, 1997, Dresser Industries,
parent company of DBS, sent a demand letter to American Cascade requesting
payment within ten days.  A
representative of DBS and Dresser Industries, G.W. Gaffney, sent two more
ten-day demand letters, dated February 19, 1997, and April 1, 1997.  Although a total of three demand letters were
sent requesting payment, no payment was ever made.[2]  The State charged appellant with theft, based
on the December 2, 1996 transaction.








Appellant denied signing the checks or authorizing anyone
else to do so.  He testified he had no
knowledge the checks were written and never saw any demand letters.  Appellant admitted, however, that he knew
some checks were returned for insufficient funds.  He testified that he had a heart attack on
August 5, 1996, and was at the well site thereafter only when he needed to
witness a procedure.

DISCUSSION

Issues One and Two: Legal and Factual Sufficiency of
the Evidence

Introduction and Standard of Review

In issues one and two, appellant challenges the legal and
factual sufficiency of the evidence to support his conviction of theft.  We apply different standards when reviewing
the evidence for legal and factual sufficiency.

When reviewing the legal sufficiency of the evidence, this
court must view the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Garrett v. State, 851 S.W.2d 853, 857
(Tex. Crim. App. 1993).  This standard of
review applies to cases involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App. 1995).  When sitting as the
sole trier of fact, the trial judge is the exclusive judge of the witnesses= credibility and the weight given to
their testimony.  Joseph v. State,
897 S.W.2d 374, 376 (Tex. Crim. App. 1995).








To determine factual sufficiency, we view the evidence in a
neutral light and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996).  We must
review the evidence weighed by the fact-finder tending to prove the existence
of the elemental fact in dispute, and compare it to the evidence tending to
disprove that fact.  Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
To reverse on the ground of factual insufficiency, we therefore must
determine either (1) the State=s evidence was so weak as to be factually insufficient, or
(2) the finding of guilt is against the great weight and preponderance of the
available evidence (i.e., that the defendant=s evidence so greatly outweighs the
State=s evidence, the verdict is clearly
wrong and manifestly unjust).  See id.
 at 11. 
These are the two prongs of the factual sufficiency standard of
review.  See Cates v. State, 66
S.W.3d 404, 409 (Tex. App.CHouston [14th Dist.] 2001, pet. granted).  Under the second, alternative sufficiency
prong, when the defendant proffers contrary evidence, we consider whether the
proof of guilt, although adequate if taken alone, is greatly outweighed by defendant=s contrary proof.  Johnson, 23 S.W.3d at 11.  We may disagree with the fact-finder=s decision, even if probative
evidence exists that supports the verdict. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  However, a factual sufficiency review must be
appropriately deferential to avoid substituting our judgment for the fact
finder=s. 
Id. at 648.  We are not
free to re-weigh the evidence, but must exercise our fact jurisdiction only to
prevent a wrong and unjust result.  Id.

The State’s Proof

A person commits theft if “he unlawfully appropriates
property with intent to deprive the owner of property.”  Tex.
Pen. Code Ann. ' 31.03(a) (Vernon Supp. 2003); see Thomason v. State,
892 S.W.2d 8, 10 (Tex. Crim. App. 1994) (listing elements of offense under
section 31.03 as “a person, with the intent to deprive the owner of property,
unlawfully appropriates that property, without the effective consent of the
owner”).

In the present case, the State, through its own witnesses and
cross-examination of defense witnesses, introduced the following evidence to
support its theory of theft by check in relation to American Cascade=s receipt of the drill bit on
December 2, 1996.

$                  
Appellant was the
chief executive officer of American Cascade, the company that issued the check
to DBS for the drill bit.

 

$                  
The check in
question had appellant=s name in the signature block.

 

$                  
Appellant=s company had a policy of leaving checks at the well
site for contractors to pay vendors as items were delivered.








$                  
American Cascade=s chief financial officer, Robert Huckaby, testified
he approved payments on checks that had appellant=s name
in the signature block of the checks, even though the signatures did not appear
to be appellant=s signature. 
Some of those checks were returned for insufficient funds.

 

$                  
Huckaby testified
that the signature on the check for which appellant was indicted and another
check paid to DBS were similar to the signatures on other checks that he
approved for payment and cleared the bank.

 

$                  
DSB sent
appellant and appellant=s company three certified letters giving notice to
appellant and the company that the checks the company issued were returned for
insufficient funds.  Two employees that
worked for appellant=s company signed the returns on two of the certified
letters DBS sent appellant.

 

$                  
Appellant failed
to pay DBS for the property he acquired after appellant=s company was informed of the checks returned for
insufficient funds.

 

Appellant’s Insufficiency Arguments

In his issue challenging the legal sufficiency of the
evidence, appellant argues the evidence was insufficient to establish (1) he
committed the offense, (2) he appropriated property without effective consent,
and (3) he had the requisite intent to commit the offense, i.e., an
intent to deprive the owner of the property.[3]  In his issue challenging the factual
sufficiency of the evidence, appellant simply sets forth the standard of review
and reiterates his legal sufficiency challenges.








Appellant=s criminal liability as a party. 
Appellant initially argues the evidence fails to establish that he
committed the offense.  Appellant denies
he signed the checks in question or had knowledge they had been issued because
he was not at the job site on a regular basis and was at home recovering from a
heart attack.  Appellant argues that,
because there is no evidence he was aware the checks had been written or were
returned for insufficient funds, the State did not prove he committed the
offense.

A person, however, can be held criminally liable if an
offense is committed by the conduct of another for which the first person is
criminally responsible.  See Texas Pen. Code Ann. ' 7.01(a) (Vernon 2000).[4]  “A person is criminally responsible for an
offense committed by the conduct of another if . . . acting with the kind of
culpability required for the offense, he causes or aids an innocent or
nonresponsible person to engage in conduct prohibited by the definition of the
offense.”  Id. ' 7.02(a)(1).[5]  This criminal liability need not be
pleaded in the indictment.  Swope v.
State, 805 S.W.2d 442, 444B45 (Tex. Crim. App. 1991); Pitts v. State, 569 S.W.2d
898, 900 (Tex. Crim. App. 1978). 
Circumstantial evidence may be sufficient to show that a person is a
party to an offense; and, in determining whether a defendant participated as a
party, a court may examine events occurring before, during, and after the
commission of the offense.  Thomas v.
State, 915 S.W.2d 597, 599B600 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d).

 








The check given in exchange for the drill bit was drawn on
AMCAS=s account.  The State established Leon was “owner” of
AMCAS by introducing a settlement check disbursed to AMCAS and a designation
Leon was to pick up the check.[6]

The State introduced checks, other than those for the two
drill bits, drawn on AMCAS Energy, Inc.=s account and showing Leon=s name signed in at least three
different handwritings.  Huckaby
testified he approved these checks to clear the bank, and they did clear.  Huckaby testified the signatures on two of
the checks appeared to be the same signature as on the December 2, 1996
check.  

Frank Roberts, a former employee of American Cascade and
AMCAS, testified that appellant was at the job site in mid-August, the day
after being discharged from the hospital, and thereafter spent a lot of time at
the well site.[7]  In addition, appellant testified that he knew
checks were being written and returned for insufficient funds.








In sum, there was evidence before the trial court showing a
pattern of persons other than appellant signing appellant=s name to checks drawn on the AMCAS
account, and there was evidence appellant knew checks were being returned for
insufficient funds.  Thus, there was
sufficient circumstantial evidence in the record from which the judge could
have reasonably inferred the appellant knew or should have known of the
practice of others writing checks not backed by sufficient funds and signing
those checks with Leon=s name.  See
Rodriguez v. State, 767 S.W.2d 817, 819B20 (Tex. App.CCorpus Christi 1989, no pet.)
(agreeing that evidence would support a conviction when employee acquired
property by filling in a company check containing appellant=s signature at appellant=s direction); see also Maxwell v.
State, 509 S.W.2d 338, 341 (Tex. Crim. App. 1974) (stating a taking by
accused who fraudulently
procures an innocent person to take property for him is a taking through
that agent, and “a taking by an innocent agent is a taking by the accused”).

Effective consent.  Appellant
next argues that the evidence was insufficient to establish that the
appropriation of the drill bit was without DBS=s effective consent.  Consent
induced by deception or coercion, however, is not effective.  Tex.
Pen. Code Ann. ' 31.01(3)(A) (Vernon Supp. 2003).[8]  Deception includes “creating or confirming by
words or conduct a false impression of law or fact that is likely to affect the
judgment of another in the transaction, and that the actor does not believe to
be true.”  Id. '
31.01(1)(A).  Deception relates to the
nature of the conduct and should be considered along with the surrounding
circumstances of the conduct of the accused. 
See Skillern v. State, 890
S.W.2d, 849, 871 (Tex. App.CAustin
1994, pet. ref=d).

Appellant argues the evidence does
not show that consent was induced by deception because no one represented that
the checks given to Pakebusch would clear the bank.  Appellant further argues the State did not
prove there were insufficient funds in the bank when the check was written.








We conclude the evidence in the
present case supports a finding of lack of effective consent.  Harry Wallace, credit manager for DBS=s parent company, testified they
expected cash in advance for deliveries to American Cascade.  DBS sales agent Pakebusch testified the
invoices indicated a cash sale, and he would not have left the drill bits at
the job site if there had not been a check for him at the time of
delivery.  See Hegar v. State, 11
S.W.3d 290, 298 (Tex. App.CHouston [1st Dist.] 1999, no pet.) (stating, in response to
factual sufficiency challenge, that deception could be found for obtaining
building materials when check without sufficient funds was used to cover
cost).  As a result, the tendering of the
check to DBS deceived DBS by creating a false impression that appellant was
purchasing the bit with the check in accordance with a cash account.

Citing Rodriguez, appellant
suggests the State needed to prove appellant=s bank account had insufficient funds
to cover the check when the check was written. 
See 767 S.W.2d at 820. 
Unlike the present case, however, Rodriguez, involved a jury
trial, and the  charge required the jury
to find that at the time of making and delivery of the check in question,
Rodriguez did not have sufficient funds “in or on deposit with the bank for
that check as well as all other checks then outstanding.”  Id.  The
trial court was under no such requirement here. 
Furthermore, appellant admitted he knew checks were being returned for
insufficient funds.  The State introduced
a second check written to DBS, dated January 2, 1997, just thirty days after
issuance of the check which formed the basis of the indictment, and that check
was also returned for insufficient funds. 
There was sufficient evidence to support a finding the appropriation was
achieved by deception and, therefore, was without DBS’s effective consent.

Intent to deprive.  Finally, appellant argues that the evidence was insufficient
to establish the element of intent to deprive DBS of property.  Appellant initially contends that the State
cannot rely on the presumption of intent to deprive provided by Penal Code
section 31.06 because language in the written notice does not comply exactly
with the language set out in that section. 
Appellant further contends that because the State’s evidence of
extraneous offenses occurred after the charged offense, the State cannot use
such evidence to show intent under section 31.03.  Finally, appellant contends the State failed
to prove the December 2, 1996 check was not for a pre-existing debt. 








If a person commits theft by check,
an intent to deprive the owner of the property is presumed if it is shown that
a check was issued when there were insufficient funds in the account to pay the
full amount of the check, the bank refused payment for insufficient funds
within 30 days after the check was issued, and the defendant did not make good
the check within 10 days after receiving notice of the bank=s refusal to pay.  See Tex.
Pen. Code. Ann. ' 31.06(a)(2) (Vernon Supp. 2003).  Notice of the refused payment may be actual
or in writing.  Id. ' 31.06(b).  Notice is in writing if sent by registered or
certified mail, return receipt
requested.  Id. '
31.06(b)(1).  This notice is sent to the
issuer at his address shown on the records of the
person to whom the check has been issued or passed.  Id.
'
31.06(b)(2)(c).  Notice in writing
contains the following statement:

This is a demand for payment
in full for a check or order not paid because of a lack of funds or
insufficient funds.  If you fail to make
payment in full within 10 days after the date of receipt of this notice, the
failure to pay creates a presumption for committing an offense, and this matter
may be referred for criminal prosecution.

 

Id. '
31.06(b)(3).  The requisite intent can also be
established by direct evidence.  Id.
' 31.06(d).

Appellant argues there was no actual
notice and because the demand letter did not follow the exact wording in the
statute, the State cannot depend on the presumption set out in Penal Code
section 31.06(a).  Appellant contends he
never received any of the three ten-day demand letters, and, in any case, they
did not comply with the statutory requirements because they mentioned neither
the creation of a presumption nor the possibility of a criminal prosecution. 








In short, the State presented
evidence DBS sent three certified letters to appellant and appellant=s company.  The third letter, dated April 1, 1997,
contained language to the effect that if appellant failed to make the returned
checks good, the matter would be turned over to the “Criminal District Attorney=s Office.”[9]  Appellant presented no legal authority for
the argument that, in order to create a presumption of intent to deprive, the
demand letter must be worded exactly the same as the statement set out in the
statute.  Thus, the trial judge could
have reasonably found that the language set out in the April 1, 1997 letter
substantially complied with the requirements of the statute. 

Furthermore, notice may also be
actual notice.  Appellant was indicted on
July 23, 1997.  The trial began on August
21, 2001.  At that time, evidence
reflects the checks had not been paid. 
Appellant testified that he knew both checks were still outstanding as
early as the time of his indictment. 
This constitutes prima facie evidence that appellant had the intent to
deprive.[10]  See Warren v. State, 91 S.W.3d 890,
896B97 (Tex. App.C Fort Worth, 2002, no pet.)
(concluding that because defendant was arrested more than ten days before
trial, defendant would have had actual notice more than ten days before trial
and this established evidence of intent when checks were still not paid at time
of trial).  Furthermore, even without reliance on the
presumption, evidence of presentment, dishonor, notice and failure  to pay may be utilized as a general assessment
of the proof of culpable intent and mode of deception.  Sulacia
v. Texas, 631 S.W.2d 569, 572 (Tex. App.CEl Paso
1982, no pet.).  A fact-finder may infer the element
of intent from the actions or conduct of the defendant.  McGee v. State, 774 S.W.2d, 229, 234
(Tex. Crim. App. 1989).  Therefore, there
was sufficient evidence before the trial court to support a finding of intent
to deprive DBS of property. 








Appellant also argues the State
failed to comply with Penal Code section 31.03 (c)(1), which provides for the
admission of evidence of an actor=s participation in previous
transactions for the purpose of showing intent.[11]  Appellant first contends that the evidence
must show the appellant participated in the extraneous offenses.  Appellant also relies on Hegar to
argue that the statute permits an inference of intent only if the recent
transaction occurred after the charged offense. 
See 11 S.W.2d at 297.  In addition to documents relating to the
charged offense, the State presented evidence of a check written to DBS dated
January 2, 1997, which was returned for insufficient funds.

The Hegar court, however,
also observed that section 31.03(c)(1) appears to be more restrictive than
rule 404(b) of the Texas Rules of Evidence, which has no such requirement that
the extraneous acts precede the charged offense.  Id. 
Seeing “no logical reason to confine admissibility of extraneous
transactions only to those occurring prior to the charged offense,” the Hegar
court held checks written after the offense were admissible pursuant to
rule 404(b).  Id.  We conclude the State=s use of evidence of extraneous
offenses was appropriate under rule 404(b).[12]









Finally, appellant argues that the
State failed to prove the checks at issue were not for a pre-existing debt, and
therefore intent cannot be presumed.  See
Selph v. State, 758 S.W.2d 908, 910B11(Tex. App.CTexarkana 1988, no pet.) (concluding
that because the evidence was insufficient to prove that Selph secured any
property solely by use of the checks in question, there was no presumption). 

Appellant=s reliance on Selph is
misplaced.  In Selph, the court
found the record was not clear about whether payment was required for delivery
of another order.  Id. at 910.[13]  Here, there was clear evidence that payment
was required for delivery of the drill bit. 
Wallace, credit manager for the account, testified appellant=s company was on a cash account and
goods had to be paid for at the time they were sold.  He further testified that the checks were
never made good and the drill bits were not returned to DBS.  Pakebusch, salesman for DBS, testified that he would not have left the drill bits at
the job site unless there had been a check for him to pick up.  The trial judge had the authority as the
trier of fact to accept one witness=s testimony
of the events and reject another=s.  See
Joseph v. State, 897 S.W.2d at
376 (stating when the trial judge is sitting as the sole trier of fact, he “is
the exclusive judge of the credibility of the witnesses and the weight to be
given to their testimony”).  The trial
judge was free to determine the checks in question were given in exchange for
the appropriated property, i.e.
the drill bit.

We conclude
the evidence is legally and factually sufficient to establish that appellant,
without DBS=s effective consent, and with
intent to deprive DBS of the property, appropriated DBS=s drill
bit.  In viewing the evidence in the
light most favorable to the verdict, the judge could have found the necessary
elements to find the appellant guilty of theft. 
Furthermore, in viewing the evidence in a neutral light, the verdict is
not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  We conclude the
evidence is both legally factually sufficient to support the conviction.

We overrule
appellant=s issues one and two.








Issue
Three: Error in Restitution Order

In issue
three, appellant argues that the trial court had no authority to compel
appellant, as a condition of probation, to make restitution to anyone other
than DBS, the named complainant.  A trial
court may not order restitution to be paid to a person who was not a victim of
the charged offense.  Martin v. State, 874 S.W.2d 674, 677B78 (Tex.
Crim. App. 1994).  In order to preserve
error concerning a probation order, however, a defendant must make a timely and
specific objection.  Tex. R. App. P. 33.1(a)(1)(A); see Idowu v. State, 73 S.W.3d 918,
921 (Tex. Crim. App. 2002) (stating if defendant wishes to complain about
appropriateness of trial court=s
restitution order, he must do so in trial court); see also Lemos v. State, 27 S.W.3d 42, 47 (Tex. App.CSan Antonio
2000, pet. ref=d) (holding defendant waived
complaint).  There is no evidence in the
record to reflect appellant made such an objection.  Therefore, appellant has not preserved the
error, and has waived his objection.      We
overrule appellant=s issue three.

We affirm
the judgment of the trial court.

 

 

_________________________________

John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed March 13, 2003.

Panel
consists of Justices Anderson, Seymore, and Guzman.

Publish C Tex. R. App. P. 47.2(b).

 











[1]  Harry Wallace,
former credit manager of DBS=s parent company, was the complainant named in the
indictment.





[2]  All three
letters were sent certified mail.  No
return receipt card for the February 4 letter was introduced into
evidence.  Returned receipt cards were
received into evidence for the February 19 and April 1 letters, signed by Chris
Greene and D. Willis, respectively. 
Appellant did not sign either card. 





[3]  Appellant is
not challenging the sufficiency of the evidence to show appropriation.





[4]  Section
7.01(a) provides:  “A person is
criminally responsible as a party to an offense if the offense is committed by
his own conduct, by the conduct of another for which he is criminally
responsible, or by both.”  Tex. Pen. Code Ann. ' 7.01(a) (Vernon 2003).





[5]  Section  7.02(a) provides in its entirety:

 

(a) A person is criminally responsible for an offense
committed by the conduct of another if:

(1) acting with the kind of culpability required for
the offense, he causes or aids an innocent or nonresponsible person to engage
in conduct prohibited by the definition of the offense;

 

(2) acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense; or

 

(3) having a legal duty to prevent commission of the
offense and acting with intent to promote or assist its commission, he fails to
make a reasonable effort to prevent commission of the offense.

 

Tex. Pen. Code Ann. ' 7.02(a) (Vernon 2003).





[6]  In addition,
Robert Huckaby, an employee of AMCAS energy and former chief financial officer
of American Cascade Energy, testified Leon was chief executive officer of
American Cascade Energy.





[7]  Huckaby and
Roberts were defense witnesses.





[8]  Section 31.01(3)(A) provides:  “ ‘Effective
consent’ includes consent by a person legally authorized to act for the
owner.  Consent is not effective if . . .
induced by deception or coercion.”

Tex. Pen. Code Ann. ' 31.01(3)(A) (Vernon 2003).

 





[9]  The first
demand letter was dated February 4, 1997, addressed to American Cascade, 16420
Park 10 Place, Suite 200, in Houston, Texas, and stated “if payment on these
checks is not received in the form of certified funds within ten (10) days from
the date of this letter, it will be necessary to file liens and refer your
account for legal action.”  The second
letter was dated February 19, 1997, addressed to Mr. Robert Leon, Amcas Energy,
Inc., 16420 Park 10 Place, Suite 200, in Houston, Texas, and included a ten-day
request for payment but did not refer to any legal action.  The third was dated April 1, 1997, addressed
to Mr. Robert Leon, American Cascade Energy, 11999 Katy Freeway, #390 in
Houston, Texas, and stated, “The Criminal District Attorney’s office instructed
me to write you this letter . . .  If
payment is not received within ten (10) days, this matter will be turned over
to the District Attorney=s office.”





[10]  Appellant
further argues that the checks were covered in a prior settlement agreement
with Halliburton, which subsequently took over DBS.  The trial court gave appellant an opportunity
at the punishment hearing to produce proof that the checks were satisfied in
the agreement with Halliburton, but there is no evidence in the record
indicating this occurred. 





[11]  Section 31.03
provides in relevant part:

(a)        A person commits an offense if he unlawfully appropriates
property with intent to deprive the owner of property.

(b)        Appropriation of property is unlawful if:

 

(1) it is without the owner=s effective consent . . . .

. . .

                        (c)        For purposes of Subsection (b):

(1) evidence that the actor has previously
participated in recent transactions other than, but similar to, that which the
prosecution is based is admissible for the purpose of showing knowledge or intent
and the issues of knowledge or intent are raised by the actor=s plea of not guilty.

Tex. Pen. Code Ann. ' 31.03 (Vernon 2003).





[12]  Because
appellant was responsible as a party to such actions, as explained above, the
State did not have to show appellant directly participated in the extraneous
offenses. 





[13]  In addition,
as appellant correctly observes, the Texarkana court decided Selph under
a construct requiring the State=s circumstantial evidence to exclude every other
reasonable hypothesis except appellant=s
guilt.  See Selph v. State, 758
S.W.2d 908, 911 (Tex. App.CTexarkana 1988, no pet.).  That analytical construct has since been
discarded.  See Geesa v. State,
820 S.W.2d 154, 159B61 (Tex. Crim. App. 1991), overruled on other
grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).