**Robert SELPH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–86–093–CR.**

Court of Appeals of Texas,
Texarkana.

Sept. 20, 1988.

Charles Butler, Bonham, for appellant.

Dan Meehan, Dist. Atty. of Fannin County, Bonham, for appellee.

PER CURIAM.

Robert Selph appeals his conviction for theft.

Selph is the former owner and operator of the Knight's Landing Restaurant in Bonham. He received food and other items for the restaurant from Kraft Food Service, and he issued a series of five checks to Kraft for food delivered during the period of July 29, 1985 through August 12, 1985, totalling $8,658.90. All five checks were returned unpaid due to insufficient funds. Selph made no attempt to pay Kraft after being notified that the checks had been returned unpaid. A jury found Selph guilty of theft over $750.00.

Selph contends that the evidence was insufficient to support the conviction. Tex. Penal Code Ann. § 31.03 (Vernon Supp. 1988) & § 31.06 (Vernon 1974). Section 31.06,[1] entitled "Presumption for Theft by Check," provides a statutory presumption of intent to deprive the owner of property under Section 31.03 if the actor obtained property by passing a check when the issuer did not have sufficient funds in the bank. It does not create a separate offense. Selph argues that the evidence is insufficient because none of the checks introduced into evidence was written for present or future deliveries of food products by Kraft. Each was given to pay a

---

1. Tex.Penal Code Ann. § 31.06 (Vernon 1974) provides:

(a) *If the actor* obtained property or *secured performance of service by issuing or passing a check* or similar sight order for the payment of money, when the issuer did not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders then outstanding, his intent to deprive the owner of property under Section 31.03 of this code (Theft) or to avoid payment for service under Section 31.04 of this code (Theft of Service) is presumed (except in the case of a postdated check or order) if:

(1) he had no account with the bank or other drawee at the time he issued the check or order; or

(2) payment was refused by the bank or other drawee for lack of funds or insufficient funds, on presentation within 30 days after issue, and the issuer failed to pay the holder in full within 10 days after receiving notice of that refusal.

(b) For purposes of Subsection (a)(2) of this section, notice may be actual notice or notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested, and addressed to the issuer at his address shown on:

(1) the check or order;

(2) the records of the bank or other drawee; or

(3) the records of the person to whom the check or order has been issued or passed.

(c) If written notice is given in accordance with Subsection (b) of this section, it is presumed that the notice was received no later than five days after it was sent.

(d) Nothing in this section prevents the prosecution from establishing the requisite intent by direct evidence.

(Emphasis added.)

pre-existing debt.[2] Selph had an open account with Kraft and paid by check for previous deliveries of merchandise.

Section 31.03 defines theft as the unlawful appropriation of property with intent to deprive the owner of the property. Appropriation of property is unlawful if it is without the owner's effective consent. Tex.Penal Code Ann. § 31.03(b)(1). And, consent is not effective if it is induced by deception. Tex.Penal Code Ann. § 31.01(4)(A) (Vernon 1974). The language in the indictment tracks the language in Section 31.03.

■■■ In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if a rational trier of fact could find all essential elements of the offense beyond a reasonable doubt. *Chambers v. State*, 711 S.W.2d 240 (Tex.Crim.App.1986). Kraft had a credit agreement with Selph whereby Selph was not required to make immediate payment for goods upon their delivery. Payment was sometimes collected at the time of the following delivery. On July 29, 1985, Selph issued a check to Kraft in the amount of $1,319.97 in payment for a previous delivery. Kraft then delivered more food to Selph on July 30, 1985. Selph subsequently issued four more worthless checks in payment for two deliveries on August 5, 1985, and two on August 12, 1985.

Other evidence indicates that Selph is forty-eight years old and had been in the restaurant business for most of his adult life. The bank had assisted him in covering many overdrafts, but about the time of this occurrence they ended the practice. Selph subsequently took bankruptcy. The Kraft Food Service turned the delinquent account over to a collection agency, and the collection agency filed a criminal complaint against Selph.

The law is clear that to support a finding of theft, the intent to defraud the owner

and appropriate the property must have existed in the accused's mind at the very time of the taking. In this case, the State apparently takes the position that the guilty intent was that Robert Selph gave the check to pay for the previous week's delivery in order to get a new supply during the week in which it was given. The record is not clear as to whether Kraft would have required last week's payment in order to give the restaurant the order that week.

According to Randy Meeks, the salesman who had accepted the check for Kraft, this was the situation:

Q. Was it not a fact that Knight's Landing and Bob Self (sic) was on a ten day account with Kraft Foods?

A. No, sir, not to the truest sense of the word. It's called a weekly account and it's past due ten days past the delivery date. Those are the terms. It's actually due at the next salesman's call.

. . . .

Q. Was there any discussion with Mr. Self (sic) at that time that he would receive no further food deliveries by Kraft unless he delivered a check to you in that amount?

A. No, sir, not to my knowledge.

. . . .

Q. The July 29 check, the giving of that check by Knight's Landing or Mr. Self (sic), was that a prerequisite for the delivery of food on the 30th of July?

A. Under the terms of credit that Mr. Self (sic) had, it was not totally necessary that that check be collected at that point in time. His terms could possibly, because of extenuating circumstances where he might have been out of town, a check was not signed, it's possible that we could've come back later in the week or collected upon the next trip for an order.

We conclude that the evidence is insufficient to prove that Selph secured any per-

---

**2.** Selph was not charged under Tex.Penal Code Ann. § 32.41 (Vernon 1974 & Supp.1988), which makes the mere giving of a check an offense when the issuer knows there are insufficient funds to cover it, whether or not property or services are secured by use of the check.

formance of service or any property solely by use of the checks in question. That being the case, there is no presumption under Section 31.06 or direct proof under Section 31.03 that he intended to deprive the owner of anything of value by using the checks.

Of course, intent almost always must be proved by circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92 (Tex.Crim.App. [Panel Op.] 1978). There is circumstantial evidence here which could indicate Selph's guilty intent, but we find that it is not sufficient to exclude every other reasonable hypothesis. It is therefore insufficient to support the conviction.

The judgment is reversed and the cause is remanded to the district court for entry of a judgment of acquittal.

BLEIL, Justice, dissenting.

I dissent to this Court's usurpation of what I believe to be a jury function: fact finding.

As the majority acknowledges, there is evidence which could indicate Selph's guilty intent, but the majority finds it not sufficient to exclude every other reasonable hypothesis. It also acknowledges that intent almost always must be proved by circumstantial evidence, citing *Dillon v. State,* 574 S.W.2d 92 (Tex.Crim.App. [Panel Op.] 1978). Over a two-week period, Selph wrote five bad checks totalling $8,658.90 for merchandise delivered to him. He never paid nor offered to pay one penny of the money he owed. Surely the jury might have been justified in concluding from the circumstances that, at least for one instant, Selph intended to deprive the owner of property. As said in *Dillon,* "it is for the trier of fact to determine which circumstances to accept as proven...." 574 S.W. 2d at 95. The majority's approach puts this Court in the position of second-guessing the jury. I believe that, as in *Dillon,* "Such an approach to the issues of proof of culpable mental states would render the evidence insufficient in all cases, as it is

always *possible* that one's intents are different than what all outward appearances would indicate."

I did not see or hear Robert Selph—nor the other witnesses—testify. I did not observe the witnesses' demeanor. The jury did. The jury, being the judges of the facts and credibility of the witnesses, is free to choose to believe or not believe the witnesses, in whole or in part. *Sharp v. State,* 707 S.W.2d 611 (Tex.Crim.App.1986). We are not the jury and therefore not so free to choose what to believe and disbelieve, neither are we free to determine what weight to give the evidence.

Viewing the evidence in the light most favorable to the prosecution and assuming that the jury did not believe Selph, but did believe the evidence against him, this Court would be required to affirm the conviction. See *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Sharp v. State,* 707 S.W.2d at 614.