Robert LEON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–01187–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 13, 2003.

Susan Norman, Houston, for Appellant.

Jorge L. Matos Ortiz, Bellville, for Appellee.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant Robert Leon was charged by indictment with the felony offense of theft of property with a value of $1,500 or more but less than $20,000. TEX. PEN.CODE ANN. § 31.03(a), (e)(4)(A) (Vernon Supp.2003). Appellant pleaded not guilty and waived his right to trial by jury. The trial court found him guilty and assessed punishment at two years' confinement in a state jail facility, probated for five years, and a $1,000.00 fine. As a condition of probation, the court ordered restitution to the complainant and multiple other entities. In three issues appellant challenges the legal and factual sufficiency of the evidence and the trial court's authority to compel appellant to make restitution to anyone other than the complainant named in the indictment. We affirm.

## FACTUAL BACKGROUND

On December 2, 1996, Buck Pakebusch, an agent of First Security DBS (DBS), delivered a drill bit to the American Cascade Drilling Company at a well site in Austin County.[1] American Cascade was

---

1. Harry Wallace, former credit manager of DBS's parent company, was the complainant named in the indictment.

one of the working interest owners of the well. The amount listed for the bit on the billing ticket, dated December 2, 1996, was $2,834.43. The same day, Pakebusch received check number 3357, dated December 2, 1996, in the amount of $2,834.43 from AMCAS, Inc., which represented the working interest in the well. On January 2, 1997, Pakebusch delivered another bit to the site. The amount listed on that billing ticket, dated January 2, 1997, was $4,590.38. The same day, AMCAS, Inc., issued check number 3361 in the amount of $4,590.38. Appellant was the chief executive officer of American Cascade, and his name appeared on the signature block of both checks. No one ever returned the bits to DBS, nor made a complaint regarding the quality of the bits.

The bank returned both checks for insufficient funds. On February 4, 1997, Dresser Industries, parent company of DBS, sent a demand letter to American Cascade requesting payment within ten days. A representative of DBS and Dresser Industries, G.W. Gaffney, sent two more ten-day demand letters, dated February 19, 1997, and April 1, 1997. Although a total of three demand letters were sent requesting payment, no payment was ever made.[2] The State charged appellant with theft, based on the December 2, 1996 transaction.

Appellant denied signing the checks or authorizing anyone else to do so. He testified he had no knowledge the checks were written and never saw any demand letters. Appellant admitted, however, that he knew some checks were returned for insufficient funds. He testified that he had a heart attack on August 5, 1996, and was at the

2. All three letters were sent certified mail. No return receipt card for the February 4 letter was introduced into evidence. Returned receipt cards were received into evi-

well site thereafter only when he needed to witness a procedure.

## DISCUSSION

### *Issues One and Two: Legal and Factual Sufficiency of the Evidence*

### Introduction and Standard of Review

In issues one and two, appellant challenges the legal and factual sufficiency of the evidence to support his conviction of theft. We apply different standards when reviewing the evidence for legal and factual sufficiency.

When reviewing the legal sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim. App.1993). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). When sitting as the sole trier of fact, the trial judge is the exclusive judge of the witnesses' credibility and the weight given to their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App.1995).

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We must review the

dence for the February 19 and April 1 letters, signed by Chris Greene and D. Willis, respectively. Appellant did not sign either card.

evidence weighed by the fact-finder tending to prove the existence of the elemental fact in dispute, and compare it to the evidence tending to disprove that fact. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). To reverse on the ground of factual insufficiency, we therefore must determine either (1) the State's evidence was so weak as to be factually insufficient, or (2) the finding of guilt is against the great weight and preponderance of the available evidence (*i.e.*, that the defendant's evidence so greatly outweighs the State's evidence, the verdict is clearly wrong and manifestly unjust). *See id.* at 11. These are the two prongs of the factual sufficiency standard of review. *See Cates v. State*, 66 S.W.3d 404, 409 (Tex. App.-Houston [14th Dist.] 2001, pet. granted). Under the second, alternative sufficiency prong, when the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by defendant's contrary proof. *Johnson*, 23 S.W.3d at 11. We may disagree with the fact-finder's decision, even if probative evidence exists that supports the verdict. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim.App.1996). However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for the fact finder's. *Id.* at 648. We are not free to re-weigh the evidence, but must exercise our fact jurisdiction only to prevent a wrong and unjust result. *Id.*

**The State's Proof**

A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp.2003); *see Thomason v. State*, 892 S.W.2d 8, 10 (Tex.Crim.App.1994) (listing elements of offense under section 31.03 as "a person, with the intent to deprive the owner of property, unlawfully appropriates that property, without the effective consent of the owner").

In the present case, the State, through its own witnesses and cross-examination of defense witnesses, introduced the following evidence to support its theory of theft by check in relation to American Cascade's receipt of the drill bit on December 2, 1996.

- Appellant was the chief executive officer of American Cascade, the company that issued the check to DBS for the drill bit.

- The check in question had appellant's name in the signature block.

- Appellant's company had a policy of leaving checks at the well site for contractors to pay vendors as items were delivered.

- American Cascade's chief financial officer, Robert Huckaby, testified he approved payments on checks that had appellant's name in the signature block of the checks, even though the signatures did not appear to be appellant's signature. Some of those checks were returned for insufficient funds.

- Huckaby testified that the signature on the check for which appellant was indicted and another check paid to DBS were similar to the signatures on other checks that he approved for payment and cleared the bank.

- DBS sent appellant and appellant's company three certified letters giving notice to appellant and the company that the checks the company issued were returned for insufficient funds. Two employees that worked for appellant's company signed the returns on two of the certified letters DBS sent appellant.

- Appellant failed to pay DBS for the property he acquired after appellant's

company was informed of the checks returned for insufficient funds.

## Appellant's Insufficiency Arguments

In his issue challenging the legal sufficiency of the evidence, appellant argues the evidence was insufficient to establish (1) he committed the offense, (2) he appropriated property without effective consent, and (3) he had the requisite intent to commit the offense, *i.e.*, an intent to deprive the owner of the property.[3] In his issue challenging the factual sufficiency of the evidence, appellant simply sets forth the standard of review and reiterates his legal sufficiency challenges.

■ **Appellant's criminal liability as a party.** Appellant initially argues the evidence fails to establish that he committed the offense. Appellant denies he signed the checks in question or had knowledge they had been issued because he was not at the job site on a regular basis and was at home recovering from a heart attack. Appellant argues that, because there is no evidence he was aware the checks had been written or were returned for insufficient funds, the State did not prove he committed the offense.

■ A person, however, can be held criminally liable if an offense is committed by the conduct of another for which the first person is criminally responsible. *See* TEXAS PEN.CODE ANN. § 7.01(a) (Vernon 2000).[4] "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense." *Id.* § 7.02(a)(1).[5] This criminal liability need not be pleaded in the indictment. *Swope v. State,* 805 S.W.2d 442, 444–45 (Tex. Crim.App.1991); *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978). Circumstantial evidence may be sufficient to show that a person is a party to an offense; and, in determining whether a defendant participated as a party, a court may examine events occurring before, during, and after the commission of the offense. *Thomas v. State,* 915 S.W.2d 597, 599–600 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd).

The check given in exchange for the drill bit was drawn on AMCAS's account. The State established Leon was "owner" of AMCAS by introducing a settlement check disbursed to AMCAS and a designation Leon was to pick up the check.[6]

3. Appellant is not challenging the sufficiency of the evidence to show appropriation.

4. Section 7.01(a) provides: "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN. CODE ANN. § 7.01(a) (Vernon 2003).

5. Section 7.02(a) provides in its entirety:
   (a) A person is criminally responsible for an offense committed by the conduct of another if:
   (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.
TEX. PEN.CODE ANN. § 7.02(a) (Vernon 2003).

6. In addition, Robert Huckaby, an employee of AMCAS energy and former chief financial officer of American Cascade Energy, testified Leon was chief executive officer of American Cascade Energy.

The State introduced checks, other than those for the two drill bits, drawn on AMCAS Energy, Inc.'s account and showing Leon's name signed in at least three different handwritings. Huckaby testified he approved these checks to clear the bank, and they did clear. Huckaby testified the signatures on two of the checks appeared to be the same signature as on the December 2, 1996 check.

Frank Roberts, a former employee of American Cascade and AMCAS, testified that appellant was at the job site in mid-August, the day after being discharged from the hospital, and thereafter spent a lot of time at the well site.[7] In addition, appellant testified that he knew checks were being written and returned for insufficient funds.

In sum, there was evidence before the trial court showing a pattern of persons other than appellant signing appellant's name to checks drawn on the AMCAS account, and there was evidence appellant knew checks were being returned for insufficient funds. Thus, there was sufficient circumstantial evidence in the record from which the judge could have reasonably inferred appellant knew or should have known of the practice of others writing checks not backed by sufficient funds and signing those checks with Leon's name. *See Rodriguez v. State*, 767 S.W.2d 817, 819–20 (Tex.App.-Corpus Christi 1989, no pet.) (agreeing that evidence would support a conviction when employee acquired property by filling in a company check containing appellant's signature at appellant's direction); *see also Maxwell v. State*, 509 S.W.2d 338, 341 (Tex.Crim.App.1974) (stating a taking by accused who fraudulently procures an innocent person to take property for him is a taking through that agent, and "a taking by an innocent agent is a taking by the accused").

■ **Effective consent.** Appellant next argues that the evidence was insufficient to establish that the appropriation of the drill bit was without DBS's effective consent. Consent induced by deception or coercion, however, is not effective. TEX. PEN.CODE ANN. § 31.01(3)(A) (Vernon Supp.2003).[8] Deception includes "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.* § 31.01(1)(A). Deception relates to the nature of the conduct and should be considered along with the surrounding circumstances of the conduct of the accused. *See Skillern v. State*, 890 S.W.2d, 849, 871 (Tex.App.-Austin 1994, pet. ref'd).

■ Appellant argues the evidence does not show that consent was induced by deception because no one represented that the checks given to Pakebusch would clear the bank. Appellant further argues the State did not prove there were insufficient funds in the bank when the check was written.

We conclude the evidence in the present case supports a finding of lack of effective consent. Harry Wallace, credit manager for DBS's parent company, testified they expected cash in advance for deliveries to American Cascade. DBS sales agent Pakebusch testified the invoices indicated a cash sale, and he would not have left the drill bits at the job site if there had not been a check for him at the time of deliv-

---

7. Huckaby and Roberts were defense witnesses.

8. Section 31.01(3)(A) provides: " 'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if ... induced by deception or coercion." TEX. PEN.CODE ANN. § 31.01(3)(A) (Vernon 2003).

ery. *See Hegar v. State,* 11 S.W.3d 290, 298 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (stating, in response to factual sufficiency challenge, that deception could be found for obtaining building materials when check without sufficient funds was used to cover cost). As a result, the tendering of the check to DBS deceived DBS by creating a false impression that appellant was purchasing the bit with the check in accordance with a cash account.

Citing *Rodriguez,* appellant suggests the State needed to prove appellant's bank account had insufficient funds to cover the check when the check was written. *See* 767 S.W.2d at 820. Unlike the present case, however, *Rodriguez,* involved a jury trial, and the charge required the jury to find that at the time of making and delivery of the check in question, Rodriguez did not have sufficient funds "in or on deposit with the bank for that check as well as all other checks then outstanding." *Id.* The trial court was under no such requirement here. Furthermore, appellant admitted he knew checks were being returned for insufficient funds. The State introduced a second check written to DBS, dated January 2, 1997, just thirty days after issuance of the check which formed the basis of the indictment, and that check was also returned for insufficient funds. There was sufficient evidence to support a finding the appropriation was achieved by deception and, therefore, was without DBS's effective consent.

■ **Intent to deprive.** Finally, appellant argues that the evidence was insufficient to establish the element of intent to deprive DBS of property. Appellant initially contends that the State cannot rely on the presumption of intent to deprive provided by Penal Code section 31.06 because language in the written notice does not comply exactly with the language set out in that section. Appellant further contends that because the State's evidence of extraneous offenses occurred after the charged offense, the State cannot use such evidence to show intent under section 31.03. Finally, appellant contends the State failed to prove the December 2, 1996 check was not for a pre-existing debt.

If a person commits theft by check, an intent to deprive the owner of the property is presumed if it is shown that a check was issued when there were insufficient funds in the account to pay the full amount of the check, the bank refused payment for insufficient funds within 30 days after the check was issued, and the defendant did not make good the check within 10 days after receiving notice of the bank's refusal to pay. *See* TEX. PEN.CODE. ANN. § 31.06(a)(2) (Vernon Supp.2003). Notice of the refused payment may be actual or in writing. *Id.* § 31.06(b). Notice is in writing if sent by registered or certified mail, return receipt requested. *Id.* § 31.06(b)(1). This notice is sent to the issuer at his address shown on the records of the person to whom the check has been issued or passed. *Id.* § 31.06(b)(2)(c). Notice in writing contains the following statement:

This is a demand for payment in full for a check or order not paid because of a lack of funds or insufficient funds. If you fail to make payment in full within 10 days after the date of receipt of this notice, the failure to pay creates a presumption for committing an offense, and this matter may be referred for criminal prosecution.

*Id.* § 31.06(b)(3). The requisite intent can also be established by direct evidence. *Id.* § 31.06(d).

Appellant argues there was no actual notice and because the demand letter did not follow the exact wording in the statute, the State cannot depend on the presumption set out in Penal Code section 31.06(a). Appellant contends he never received any

of the three ten-day demand letters, and, in any case, they did not comply with the statutory requirements because they mentioned neither the creation of a presumption nor the possibility of a criminal prosecution.

In short, the State presented evidence DBS sent three certified letters to appellant and appellant's company. The third letter, dated April 1, 1997, contained language to the effect that if appellant failed to make the returned checks good, the matter would be turned over to the "Criminal District Attorney's Office." [9] Appellant presented no legal authority for the argument that, in order to create a presumption of intent to deprive, the demand letter must be worded exactly the same as the statement set out in the statute. Thus, the trial judge could have reasonably found that the language set out in the April 1, 1997 letter substantially complied with the requirements of the statute.

Furthermore, notice may also be actual notice. Appellant was indicted on July 23, 1997. The trial began on August 21, 2001. At that time, evidence reflects the checks had not been paid. Appellant testified that he knew both checks were still outstanding as early as the time of his indictment. This constitutes prima facie evidence that appellant had the intent to deprive.[10] *See Warren v. State,* 91 S.W.3d 890, 896–97 (Tex.App.-Fort Worth, 2002, no pet.) (concluding that because defendant was arrested more than ten days before trial, defendant would have had actual notice more than ten days before trial and this established evidence of intent when checks were still not paid at time of trial). Furthermore, even without reliance on the presumption, evidence of presentment, dishonor, notice and failure to pay may be utilized as a general assessment of the proof of culpable intent and mode of deception. *Sulacia v. State,* 631 S.W.2d 569, 572 (Tex.App.-El Paso 1982, no pet.). A fact-finder may infer the element of intent from the actions or conduct of the defendant. *McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App.1989). Therefore, there was sufficient evidence before the trial court to support a finding of intent to deprive DBS of property.

■ Appellant also argues the State failed to comply with Penal Code section 31.03(c)(1), which provides for the admission of evidence of an actor's participation in previous transactions for the purpose of showing intent.[11] Appellant first contends

9. The first demand letter was dated February 4, 1997, addressed to American Cascade, 16420 Park 10 Place, Suite 200, in Houston, Texas, and stated "if payment on these checks is not received in the form of certified funds within ten (10) days from the date of this letter, it will be necessary to file liens and refer your account for legal action." The second letter was dated February 19, 1997, addressed to Mr. Robert Leon, Amcas Energy, Inc., 16420 Park 10 Place, Suite 200, in Houston, Texas, and included a ten-day request for payment but did not refer to any legal action. The third was dated April 1, 1997, addressed to Mr. Robert Leon, American Cascade Energy, 11999 Katy Freeway, #390 in Houston, Texas, and stated, "The Criminal District Attorney's office instructed me to write you this letter ... If payment is not received within ten (10) days, this matter will be turned over to the District Attorney's office."

10. Appellant further argues that the checks were covered in a prior settlement agreement with Halliburton, which subsequently took over DBS. The trial court gave appellant an opportunity at the punishment hearing to produce proof that the checks were satisfied in the agreement with Halliburton, but there is no evidence in the record indicating this occurred.

11. Section 31.03 provides in relevant part:
    (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
    (b) Appropriation of property is unlawful if:
    (1) it is without the owner's effective consent. . . .

that the evidence must show the appellant participated in the extraneous offenses. Appellant also relies on *Hegar* to argue that the statute permits an inference of intent only if the recent transaction occurred before the charged offense. *See* 11 S.W.3d at 297. In addition to documents relating to the charged offense, the State presented evidence of a check written to DBS dated January 2, 1997, which was returned for insufficient funds.

The *Hegar* court, however, also observed that section 31.03(c)(1) appears to be more restrictive than rule 404(b) of the Texas Rules of Evidence, which has no such requirement that the extraneous acts precede the charged offense. *Id.* Seeing "no logical reason to confine admissibility of extraneous transactions only to those occurring prior to the charged offense," the *Hegar* court held checks written after the offense were admissible pursuant to rule 404(b). *Id.* We conclude the State's use of evidence of extraneous offenses was appropriate under rule 404(b).[12]

▮ Finally, appellant argues that the State failed to prove the checks at issue were not for a pre-existing debt, and therefore intent cannot be presumed. *See Selph v. State*, 758 S.W.2d 908, 910–11 (Tex.App.-Texarkana 1988, no pet.) (concluding that because the evidence was insufficient to prove that Selph secured any property solely by use of the checks in question, there was no presumption).

Appellant's reliance on *Selph* is misplaced. In *Selph*, the court found the record was not clear about whether payment was required for delivery of another order. *Id.* at 910.[13] Here, there was clear evidence that payment was required for delivery of the drill bit. Wallace, credit manager for the account, testified appellant's company was on a cash account and goods had to be paid for at the time they were sold. He further testified that the checks were never made good and the drill bits were not returned to DBS. Pakebusch, salesman for DBS, testified that he would not have left the drill bits at the job site unless there had been a check for him to pick up. The trial judge had the authority as the trier of fact to accept one witness's testimony of the events and reject another's. *See Joseph v. State*, 897 S.W.2d at 376 (stating when the trial judge is sitting as the sole trier of fact, he "is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony"). The trial judge was free to determine the checks in question were given in exchange for the appropriated property, *i.e.* the drill bit.

We conclude the evidence is legally and factually sufficient to establish that appellant, without DBS's effective consent, and with intent to deprive DBS of the proper-

---

. . .
(c) For purposes of Subsection (b):
  (1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty.
TEX. PEN.CODE ANN. § 31.03 (Vernon 2003).

12. Because appellant was responsible as a party to such actions, as explained above, the State did not have to show appellant directly participated in the extraneous offenses.

13. In addition, as appellant correctly observes, the Texarkana court decided *Selph* under a construct requiring the State's circumstantial evidence to exclude every other reasonable hypothesis except appellant's guilt. *See Selph v. State*, 758 S.W.2d 908, 911 (Tex.App.-Texarkana 1988, no pet.). That analytical construct has since been discarded. *See Geesa v. State*, 820 S.W.2d 154, 159–61 (Tex.Crim.App.1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000).

ty, appropriated DBS's drill bit. In viewing the evidence in the light most favorable to the verdict, the judge could have found the necessary elements to find the appellant guilty of theft. Furthermore, in viewing the evidence in a neutral light, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We conclude the evidence is both legally factually sufficient to support the conviction.

We overrule appellant's issues one and two.

### Issue Three: Error in Restitution Order

In issue three, appellant argues that the trial court had no authority to compel appellant, as a condition of probation, to make restitution to anyone other than DBS, the named complainant. A trial court may not order restitution to be paid to a person who was not a victim of the charged offense. *Martin v. State*, 874 S.W.2d 674, 677–78 (Tex.Crim.App.1994). In order to preserve error concerning a probation order, however, a defendant must make a timely and specific objection. Tex.R.App. P. 33.1(a)(1)(A); *see Idowu v. State*, 73 S.W.3d 918, 921 (Tex.Crim.App. 2002) (stating if defendant wishes to complain about appropriateness of trial court's restitution order, he must do so in trial court); *see also Lemos v. State*, 27 S.W.3d 42, 47 (Tex.App.-San Antonio 2000, pet. ref'd) (holding defendant waived complaint). There is no evidence in the record to reflect appellant made such an objection. Therefore, appellant has not preserved the error, and has waived his objection.

We overrule appellant's issue three.

We affirm the judgment of the trial court.