# NO. 12-06-00434-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROGER HUNTER, III,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Roger Hunter, III appeals his conviction for aggravated robbery. A jury found him guilty and sentenced him to imprisonment for thirty years. On appeal, Appellant contends that the evidence is factually insufficient to support his conviction and that the trial court erred in failing to instruct the jury on the lesser included offense of robbery. We affirm.

### BACKGROUND

On May 9, 2006, Jeremy Francis was alone in the home he rented with two other men when a woman came to his back door asking to use the telephone. The woman was crying and told Frances that her boyfriend had just beaten her up. After making a quick call, she left, saying she had gotten a ride.

A few minutes later, Francis was in his bedroom and looked up to see six men enter the house through the back door. Their faces were covered with bandana masks and they were armed with two pistols and one sawed-off shotgun. They put the guns in Francis's face, cursed him, and dragged him down the hallway. Francis feared for his life and his safety. The men split up, one man

staying with Francis while the others quickly searched the house. They stole a laptop computer, some watches, some clothes and other items, and twenty dollars from Francis. Then all the men ran from the house. Francis followed and saw them jump into a late 1980s model Chevrolet Caprice. Francis ran to a neighbor's house and called the police.

The police quickly located and stopped the fleeing robbers, who immediately got out of the car and ran. All the robbers were soon apprehended in the area. Finding a piece of clothing that had been dropped near the abandoned car, a police tracking dog followed the trail to a piece of fencing that was leaning against another fence. Cowering underneath was Appellant with a codefendant, Reginald Braxton. Appellant and Braxton were put into a police car. The patrol car's camera was turned on and focused on the two men in the back seat.

The police searched the abandoned Caprice and found the items that had been stolen from Francis's house, together with the two pistols and the shotgun used in the robbery. The victims identified the items recovered in the car as items stolen from their house. The police also found in the car a photograph of several of the individuals arrested that night. In the photograph, the codefendants were making gang signs with their hands that identified them as Northside Cripps. However, Appellant was not in the photograph. The codefendant robbers had tattoos that also identified them as members of the Cripps street gang. Another codefendant arrested near the abandoned Caprice, Justin Black, gave a confession to the police in which he admitted that he, the other five men, and the woman arrested that night had committed the armed robbery of Jeremy Francis in his home, and named all the robbers, including Appellant. Francis was able to identify only the woman through a police lineup because she had come to his house without a bandana mask over her face. He could not identify the six men because they wore masks.

An officer testified about placing Appellant and Reginald Braxton in the back seat of his patrol car and turning on the camera. The video of the conversation Appellant and Braxton had while they were alone in the patrol car was played to the jury. In the video, Appellant and Braxton discussed the abandoned Caprice as belonging to another of the robbers, Justin Black. They also discussed the shotgun and two pistols the police found in the trunk of the car. Significantly, they wondered if the police checked the contents of the car's locked trunk, and mentioned the unique sawed-off shotgun that was used in the robbery. The two men also discussed whether the other

robbers, whom they named, would give statements to the police indicating they were involved in the robbery, and discussed the necessity of the two of them keeping their stories consistent in order to avoid being implicated in the crime. The two discussed the woman in the car, and the fact that she did not attempt to run when the police stopped the car. They wondered whether she would talk with the police and identify them as being involved in the crime. They also discussed Kevin Reed, another of the robbers. However, the two did not admit to participating in the actual robbery.

Tyler Police Department Sergeant Walsworth testified about supervising the police operation leading to the arrest of the six robbers, Julesia Miles, Kevin Reed, Reginald Braxton, Cornelius Allen, Justin Black, and Appellant. Walsworth testified that Justin Black confessed that he and the other five men had committed the robbery of Jeremy Francis, and that the evening's crime spree had originated in Appellant's home in Jacksonville, Texas. Black also told the officer about how Miles went to the Francis residence to see how many people were in the house, and described the robbery much as Francis had. Tyler Police Detective Wayne Thomas testified that Black confessed to the robbery, and had identified Appellant as one of the robbers. Thomas also said the victims identified the clothing stolen in the robbery.

Detective Chris Miller testified about Appellant's numerous tattoos that identified him as a member of the Cripps criminal street gang, including those that stand for "Cripps killer" or "cop killer." Miller also explained that, due to having similar tattoos, Appellant can be identified as a member of the same gang as the other men arrested for the robbery.

After the State rested and closed, Appellant rested and closed without presenting any witnesses. The jury convicted Appellant of aggravated robbery and sentenced him to imprisonment for thirty years.

### FACTUAL SUFFICIENCY

In his first issue, Appellant contends the evidence is factually insufficient to support his conviction. He asserts that the State failed to establish that he was present at the scene during the robbery or participated in the robbery as a principal actor or as a party.

**Applicable Law**

3

In conducting a factual sufficiency review of the evidence, we assume that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We view all of the evidence in a neutral light. *See Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *23 (Tex. Crim. App. June 25, 2008). We then ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Id*. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact finder's determination is clearly wrong and manifestly unjust or (2) when contrary evidence so greatly outweighs the evidence supporting the conviction that the fact finder's determination is clearly wrong and manifestly unjust. *Id*. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Grotti*, 2008 Tex. Crim. App. LEXIS 761, at *23. A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

The fact that an appellate court might harbor a subjective level of reasonable doubt is not enough to overturn a conviction that is founded on legally sufficient evidence. *See Watson v. State,* 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Although an appellate court is authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). A jury is in the best position to evaluate the credibility of witnesses, and an appellate court is required to afford "due deference" to the jury's determination. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006), *cert. denied*, 128 S. Ct. 87 (2007).

As applicable to this case, a person commits the offense of robbery when, in the course of committing theft, with the intent to obtain or maintain control of the property, a person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). As applicable to this case, a person commits aggravated

4

robbery, if in the course of committing robbery as defined in Section 29.02, he uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003). A person can be held criminally liable if an offense is committed by the conduct of another for which the first person is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). Circumstantial evidence may be sufficient to show that a person is a party to an offense; and, in determining whether a defendant participated as a party, a court may examine events occurring before, during, and after the commission of the offense. *Leon v. State*, 102 S.W.3d 776, 781 (Tex. App.–Houston [14th Dist.] 2003, no pet.).

## Application

The indictment against Appellant alleged that he, "while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[d] Jeremy Francis in fear of imminent bodily injury or death" and that he "used or exhibited a deadly weapon, to-wit: a firearm, during the commission of or immediate flight from said offense." The jury charge contained an instruction on the law of parties.

Supporting the jury's verdict is the evidence that the victim was robbed by six men with guns who left the victim's house in a specifically described car, which was very quickly stopped by police a short distance from the victim's house. All six men, together with the woman who assisted in the robbery, as described by the victim, were promptly captured after the men got out of the car and attempted to flee on foot. The guns used in the crime, and the items stolen in the robbery, were found in the car abandoned by the robbers. Appellant and a codefendant, both from Jacksonville, Texas, were found, with the use of a tracking dog, a short distance from the car, in the middle of the night, while hiding under a piece of fencing. The two men were placed in a police car after their arrest where they were recorded discussing how to avoid being implicated in the robbery. Another codefendant confessed to the robbery and identified all the robbery participants, including Appellant. Further, Appellant's tattoos identified him as being a member of the same criminal street gang as others arrested that night.

5

Not supporting the conviction is the evidence that the victim could not identify Appellant because the robbers wore bandanas on their faces, and no bandanas were recovered. Further, Appellant urges that the absence of fingerprints on the guns also failed to connect him to the crime.

The testimony before the jury described six men who worked in concert to rob Francis and who used three guns. Although half of the men did not personally wield the guns, under the "party" charge, each actor is criminally responsible for the acts of every actor in the crime because the men were working together. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a). Francis's description of the aggravated robbery showed that every man was actively involved in the crime. Thus, even if Appellant was not in physical possession of a gun during the aggravated robbery, he could be held legally responsible for the crime.

Taken together, the evidence is factually sufficient to support Appellant's conviction. The evidence supporting the jury's verdict that Appellant was one of the robbers is not so weak that the jury's determination is clearly wrong and manifestly unjust. Also, the evidence supporting the jury's finding that guns were used in the crime is not so weak that the jury's determination is clearly wrong and manifestly unjust. Neither does the conflicting evidence outweigh the evidence supporting the conviction. *See Grotti*, 2008 Tex. Crim. App. LEXIS 761, at *23. Under the law of criminal responsibility, all the robbers were equally liable for the use of the firearms. *See* TEX. PENAL CODE ANN. § 7.02(a). Thus, the evidence is factually sufficient to support the judgment. Appellant's first issue is overruled.

## LESSER INCLUDED OFFENSE

In his second issue, Appellant contends the trial court erred in failing to include in the jury charge his requested instruction on the lesser included offense of robbery. He argues that there was evidence before the jury that would permit it to find that he was guilty of robbery only.

A trial court must prepare and deliver a jury charge that distinctly sets forth the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). Whether a defendant is entitled to a lesser included offense jury charge instruction is determined by a two step analysis. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). The first step is to determine whether an offense is a lesser included offense of the alleged offense. *Salinas v. State*, 163 S.W.3d

6

734, 741 (Tex. Crim. App. 2005). This determination is a question of law, and is not dependent on the evidence produced at trial. *Hall*, 225 S.W.3d at 535. In the appropriate situation, robbery is a lesser included offense of aggravated robbery. *Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.–Austin 2007, no pet.) (op. on reh'g). The second step is to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. *Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741.

Appellant is correct that robbery is a lesser included offense of aggravated robbery. The only difference under the facts of this case is that a charge of aggravated robbery has the additional element of the use or exhibition of a deadly weapon. However, his argument fails on the second element of the lesser included offense analysis. Appellant contends he is entitled to an instruction on the lesser included offense of robbery because there were six individuals robbing Francis, but there were only three guns. Thus, three of the men were not personally using or exhibiting a gun. Because the men all wore bandanas to conceal their identity, Francis was unable to identify which of the three men were armed and which were unarmed. Thus, Appellant contends, he could have been one of the three men who was not carrying a gun, and without using or exhibiting a gun, he personally was entitled to the lesser included offense instruction in the jury charge.

Under the law of parties that was correctly included in the jury charge, all defendants were legally responsible for the actions of their codefendants in this crime. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a). Thus, whether Appellant was himself actually using or exhibiting one of the guns is irrelevant if the evidence establishes, as it does, that any of his codefendants was using or exhibiting a gun. Therefore, by Appellant's own argument, Appellant could not have been found guilty of robbery only and he was not entitled to the lesser included offense instruction. *See Hall*, 225 S.W.3d at 536. Because Appellant was not entitled to a jury charge on the lesser included offense of robbery, the trial court did not err in denying Appellant's requested robbery charge. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.


    SAM GRIFFITH    
Justice


Opinion delivered September 3, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)