ACCEPTED
03-14-00700-CR
3833789
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/20/2015 4:29:14 PM
JEFFREY D. KYLE
CLERK

No. 03-14-000700-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/20/2015 4:29:14 PM
JEFFREY D. KYLE
Clerk

********

# ALEXANDRIA TAMMY HAMILTON

## VS.

# THE STATE OF TEXAS

********

ON APPEAL FROM THE 426th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 72513

******

# STATE'S BRIEF

******

HENRY GARZA
DISTRICT ATTORNEY

BOB D. ODOM
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

1

# TABLE OF CONTENTS

**ITEM**                                                                 **PAGE**

Index of Authorities ................................................................................   4

Statement Regarding Oral Argument ....................................................   6

Statement of the Case .........................................................................   6

Statement of Facts ..............................................................................   7

Summary of State's Argument .............................................................   11

Argument and Authorities ...................................................................   11

  First Issue on Appeal .........................................................................   11
  (Appellant's Points 1-8)
       TRIAL COURT ABUSE DISCRETION IN ADMITTING
       EXTRANEOUS OFFENSE UNDER RULE 404(b)

    Standard of Review .......................................................................   12

    Application and Analysis ..............................................................   12

  Second Issue on Appeal .....................................................................   23
  (Appellant's Points 9-15)
       TRIAL COURT ABUSE DISCRETION IN FINDING
       PROBATIVE VALUE OF NOT OUTWEIGHED BY
       PREJUDICIAL AFFECT UNDER RULE 403.

    Standard of Review .......................................................................   23

    Application and Analysis .............................................................   24

Prayer ........................................................................... 28

Certificate of Compliance with Rule 9 .................................... 29

Certificate of Service ........................................................... 29

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Bisby v. State*, 907 S.W.2d 949 (Tx. App. Ft. Worth ........................... 16
    2nd Dist. 1995 rev. ref.), Cert den. 528 U.S. 849 (1999)

*Boswell v. State*, No. 03-11-00117-CR, 2012 Tex. App. ..................... 14
    LEXIS 7177 (Tx. App. Austin 3rd Dist. 2012 no pet.),
    not designated for publication.

*Bush v. State*, 628 S.W.2d 441 (Tx. Cr. App. 1982) ........................... 16

*Gamez v. State*, 737 S.W.2d 315 (Tx. Cr. App. 1987) ........................ 26

*Hegar v. State*, 11 S.W.3d 290 ................................................................ 14
    (Tx. App. Houston 1st Dist. 1999 no pet.)

*Lomaugh v. State*, 514 S.W.2d 758 (Tx. Cr. App. 1974) .................... 16

*Montgomery v. State*, 810 S.W.2d 372 (Tx. Cr. App. 1990) ..............12, 17

*Mozon v. State*, 991 S.W.2d 841 (Tx. Cr. App. 1999) ........................ 24

*Wheeler v. State*, 67 S.W.3d 879 (Tx. Cr. App. 2002) ........................ 24

*Williams v. State*, 301 S.W.3d 675 (Tx. Cr. App. 2009) .....................12, 13

**OTHER**

*Texas Penal Code*

    Section 22.02(b)(1) ................................................................ 20

*Texas Family Code*

    Section 71.0021(b) ................................................................ 20

*Texas Rules of Evidence*

Rule 403 ...................................................................... 11, 23-24 & 28

Rule 404(b) ..........................................................11-14, 16-17 & 22, 23

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Alexandria Tammy Hamilton, was indicted for the offense of Aggravated Assault. The indictment charged that she "...did then and there intentionally, knowingly, and recklessly cause serious bodily injury to Antonio Jennings by stabbing the said Antonio Jennings with a knife, and...did then and there use a deadly weapon, to-wit: a knife, during the commission of said assault, and the said Antonio Jennings was a person with whom the defendant has or had a dating relationship, as described by Section 71.002(b) of the Texas Family Code." (CR-5).

She was tried before a jury in the 426th District Court of Bell County, Texas, Judge Fancy Jezek presiding, and found guilty by the jury. (CR-62; RR12-62). Upon her election (CR-17), the same jury assessed punishment at 60 years in the Texas Department of Criminal Justice. (CR-63; RR15-39).

The Appellant gave timely notice of appeal (CR-81) and the trial court certified her right to do so. (CR-77).

## STATEMENT OF FACTS

The Appellant and Antonio Jennings had been dating for some time and lived together off and on. (RR8-61, 63, 64). Their relationship became stormy, however, because of her jealousy, principally over his continued contact with Crystal Whiteside, the mother of his children. (RR8-70, 71, 75, 79, 81, 83, 84, 93, 94). He and Ms. Whiteside were in the process of trying to reconcile their differences so that they could act as co-parents to their children. (RR8-65, 67; RR9-109).

The Appellant began confronting Jennings about the relationship, provoking a number of arguments that became intense. (RR8-92, 93, 94).

On the day of the stabbing, Jennings had gone with Crystal Whiteside to "Chuck E. Cheese" for their daughter's birthday. Jennings planned to attend her birthday party the following evening. (RR8-93, 94; RR9-107, 108).

That night the Appellant and Jennings were drinking and playing cards with friends when she became angry about his time with his "baby momma" and started demanding to know why he was going to his daughter's birthday. (RR8-94).

She went into the bedroom where he joined her to attempt to diffuse the situation. They sat on the bed and gradually began to become intimate. (RR8-93, 94, 95). When he attempted to have intercourse, however, she again became angry and aggressive and again complained of Crystal Whiteside. (RR8-95, 96, 97). As he was getting up from the bed she grabbed a knife and stabbed him a number of times. She then just walked out of the room without saying a word. (RR8-99).

He was bleeding profusely and managed to leave the duplex apartment and to go to his sister, Cheleste Jennings, who lived in another of the duplex units. (RR8-100, 101, 102). They called 911 and Cheleste and her boyfriend, Dantral Felton, ministered to him until the police and paramedics arrived. (RR9-58, 59, 93, 94, 95).

Jennings was taken to Darnall Army Hospital in Killeen and then to Baylor Scott and White in Temple. He was stabbed three times in the torso and also suffered a cut on his arm and lacerations of his finger. (RR8-101; RR9-79). About 40% of his blood had to be replaced. His kidney was lacerated and he had a collapsed lung. Surgery was required to remove clotted blood so that the lung could expand. (RR9-81, 81). His injuries were life threatening. (RR9-83).

When the police arrived at the scene of the stabbing, the Appellant claimed that she had stabbed Jennings in self-defense because he was sexually assaulting her. (RR8-40, 42, 54). She pointed to a number of items in the apartment that had been overturned. (RR8-22, 54, 55). By examining the blood splatters and other physical evidence, however, the investigating officers became suspicious that the scene had been staged. All of the furniture in disarray had been turned over after the blood had been deposited. (RR9-153).

Immediately after the stabbing and prior to the arrival of the ambulance, the Appellant told Jennings' sister, Cheleste Jennings, that she was "done with him" and tired of him breaking her stuff. She did not mention any sexual assault. (RR9-57, 58, 61, 62).

The Appellant was taken to the hospital where a sexual assault examination was performed by a SANE nurse. (RR10-73). She told the nurse that Jennings had sexually assaulted her and that she grabbed the knife and stabbed him only after he hit her in the course of the assault. (RR10-80, 81, 82, 85).

Later that day, the Appellant went to the Killeen Police Department of her own accord. She told the officer that she was being followed by associates of Jennings; however, the police were unable to

locate the vehicle she described. (RR10-41, 42). She also claimed that she had been sexually assaulted by Antonio Jennings; however, she refused to give a statement concerning that alleged offense and quickly left the police station. (RR10-43, 44, 46, 47, 48). Later, she agreed on three occasions to speak with Detective Brank about her sexual assault allegations, but failed to keep any of the appointments. (RR10-20, 21).

At trial the Appellant consistently maintained that she had stabbed Mr. Jennings in self-defense. Her counsel extensively questioned the perspective jurors on the issue (RR4-99-104) and cross examined the responding police officers about her claim that she had been defending herself from sexual assault. (RR8-40, 42, 57; RR10-26). She also offered testimony from the SANE nurse who examined her containing her account of the events and allegations of sexual assault by Jennings. (RR10-70-100).

Her actions after the offense, however, rebutted her claims and indicated her continued jealousy and animosity directed against Crystal Whiteside and her relationship with Jennings. (RR9-10-13, 63-67, 110-115, 137-139). There was also evidence that, in explaining her subsequent actions, she admitted to Antonio Jennings' brother, Jerry Jennings, that she had stabbed Antonio and that she did it because she

felt betrayed by his being around the mother of his baby, Crystal Whitesides. (RR9-137).

## SUMMARY OF STATE'S ARGUMENT

The trial court did not abuse its discretion in admitting the extraneous offense complained of because it was relevant under Rule 404(b) both to prove motive and to rebut the Appellant's defensive theory of self-defense.

The trial court did not abuse its discretion in holding that the danger of unfair prejudice did not outweigh the probative value of the evidence under Rule 403 because the issue of self-defense and motive was the only contested issue in the trial and the evidence was compelling and vitally needed in order to resolve those issues. Given the primacy of the issue the State did not expend excessive time in the presentation of that evidence nor can it be said that there was a danger of an irrational and indelible effect upon the jury as the issue was relied upon exclusively by Appellant.

## ARGUMENT AND AUTHORITIES

### *First Issue on Appeal (Appellant's Points of Error One through Eight)*

Did the trial court abuse its discretion in the admission of extraneous offenses and misconduct under Rule 404(b) of the *Texas Rules of Evidence*?

### *Standard of Review*

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tx. Cr. App. 2009). Thus, the trial court's decision will not be disturbed on appeal as long it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tx.Cr.App. 1990).

### *Application and Analysis*

### **Appellant's Brief**

The Appellant includes eight points of alleged error in a single issue presented to the court, arguing them all together. Therefore, it is necessary for the State to respond in kind.

She includes the following in those points:

*Point One*: Mention of her prior conviction in Virginia.

*Point Two*: Her subsequent burglary of the apartment of the victim's sister.

*Point Three*:   Her subsequent vandalization of the car belonging to Crystal Whiteside.

*Point Four*:   Her subsequent vandalization of the car belonging to the victim's brother, Jerry Jennings.

*Point Five*:   Her subsequent attempted burglary of Crystal Whiteside's car.

*Point Six*:   Her threat to hire someone to get Crystal Whiteside before the commission of the offense.

*Point Seven*:  Her threat to beat Crystal Whiteside before the stabbing.

*Point Eight*:  Her stalking of Crystal Whiteside.

**Rule 404(b)**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. Such evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, the absence of mistake or accident.

The rebuttal of a defensive theory is one of the purposes for which evidence of extraneous offenses may be admitted under Rule 404(b). *Williams* at 687.

13

Admissibility of extraneous offenses under Rule 404(b) is not confined merely to those occurring prior to the offense charged. *Hegar v. State*, 11 S.W.3d 290, 297 (Tx. App. Houston 1st Dist. 1999 no pet.); see also *Boswell v. State*, No. 03-11-00117, 2012 Tex. App. LEXIS 7177 (Tx. App. Austin 3rd Dist. 2012, no pet.), not designated for publication, following *Hegar*.

**This Case**

In this case the Appellant filed her Request for Notice of Intent to Offer Evidence of Extraneous Conduct (CR-20) as well as a Motion in Limine Regarding Extraneous Offenses (CR-18). The State responded by filing its notices of such extraneous acts (CR-43, 47). See Rule 404(b).

Prior to the presentation of evidence to the jury the trial court took up the Appellant's motion in limine. At the conclusion of the hearing the trial court held that prior assaultive behavior by the Appellant against the victim, Antonio Jennings would be admitted. The Appellant does not contest that ruling on appeal as none of her complaints go to that testimony. With respect to the other matters the court withheld its ruling. (RR7-57).

The threshold question is whether or not the evidence had relevancy beyond character conformity under Rule 404(b). In each

instance it was relevant both to rebut the defensive theory of self-defense and to show motive.

In this case it was uncontested that the Appellant stabbed Antonio Jennings multiple times with a knife. The only issue in the case was whether or not she did so in self-defense. Mr. Jennings testified that the Appellant had long been upset because he continued to see and co-parent his children with their mother, Crystal Whiteside. He stated that on the night of the stabbing she was angry because he had spent part of the day with his daughter and her mother celebrating the child's birthday. Jennings said that, after an attempt to reconcile that led to a moment of intimacy, she again expressed anger about Crystal and grabbed the knife and repeatedly stabbed him.

The Appellant, on the other hand, claimed to the responding officers that she had stabbed Jennings in self-defense because he was sexually assaulting her. He also went to the police department to make that claim, but refused to give a statement concerning the alleged assault. During trial she consistently urged that she had acted in self-defense in the voir dire of the jury panel, cross examination of the State's witnesses, and in the evidence she offered, including the testimony of the SANE nurse giving her detailed account of the events.

By pursuing the defensive theory of self-defense, she also placed motive in issue. Proof of motive for the crime tends to negate claims that the accused acted only in self-defense. *Lomaugh v. State*, 514 S.W. 2d 758 (Tx. Cr. App. 1974).

The Appellant attempts to dismiss the question of motive out of hand by observing that motive was not one of the elements of the offense charged, however, evidence of motive is always admissible because it is relevant as a circumstance tending to prove the commission of the offense. *Bush v. State*, 628 S.W.2d 441, 444 (Tx. Cr. App. 1982); *Bisby v. State*, 907 S.W.2d 949, 958 (Tx. App. Ft. Worth 2nd Dist. 1995 rev. ref.), cert. den. 528 U.S. 849 (1999).

The defensive theory of self-defense was raised and relied upon by the Appellant and, therefore, the State was entitled to rebut it. Proof of motive was one way to do so. Antonio Jennings testified that the Appellant stabbed him as a result of a festering jealousy of his continued contact with the mother of his children. The Appellant contended that she did so only in order to defend herself from a sexual assault.

The only question under Rule 404(b) was whether or not the trial court abused its discretion in finding relevancy with respect to the evidence admitted beyond mere character conformity. Evidence is

admissible under the rule where it logically serves to make more or less probable an elemental fact; serves to make more or less probable an evidentiary fact the inferentially leads to an elemental fact; or where it serves to make more or less probable defensive evidence that undermines an elemental fact. Such evidence has relevance beyond mere character conformity. *Montgomery* at 387.

In each instance complained of by the Appellant the trial court did not abuse its discretion in finding the evidence relevant under Rule 404(b).

**Crystal Whiteside**

The Appellant complains of the admission of five instances of extraneous conduct directed at Crystal Whiteside. (Appellant's Points of Error 3, 5, 6, 7, and 8). First, she cites testimony that indicated that she vandalized Crystal Whitehead's car shortly after the commission of the offense charged. Antonio Jennings testified that after he was released from the hospital he stayed off and on with Crystal Whiteside and during that time sugar was put in Whiteside's gas tank and her tires slashed. (RR9-10). Ms. Whiteside testified that the Appellant began harassing her and related the incident of vandalism of her vehicle. (RR9-106, 110). She also stated that she heard the Appellant admit that she

was the one who vandalized the car. (RR9-115). The Appellant admitted to her friend, Angela Gomez, that she had put the sugar in Crystal's car and slashed her tires and had burglarized her home. (RR10-65, 66, 67).

Next, she complains about testimony which she characterizes as evidence of her attempted burglary of Whitesides' car. This involves testimony concerning an incident after the stabbing in which she and Whiteside were arguing and the victim's brother, Jerry Jennings, separated them. Crystal Whitesides got into her car and locked the door and the Appellant attempted to open the driver's door and get into Whitesides' car. (RR9-13, 115, 116). She also alleges that the trial court erred in admitting evidence that she "stalked" Crystal Whiteside after the offense. Whiteside testified that the Appellant repeatedly drove by her residence (RR9-111). Angela Gomez was with the Appellant when she went out of her way to drive by Whiteside's house. (RR10-66).

Then turning to the time prior to the stabbing of Antonio Jennings, the Appellant complains of testimony that she had threatened Crystal Whiteside. Antonio Jennings sister, Cheleste Jennings, testified that prior to her brother's stabbing the Appellant had told her that she did not like Crystal Whiteside and that if she was back home she could pay

18

someone a bag of weed to do something bad to her. (RR9-66). Cheleste also testified that the Appellant told her about a time when she said that she and Antonio were in a car and saw Crystal Whiteside and the only thing that prevented her from getting out to "beat her ass" was that Antonio stopped her and she had a cast on her ankle. (RR9-66).

Did this evidence logically serve to make more or less probable the defensive theory that she stabbed Antonio Jennings in self-defense from sexual assault? Clearly it did. It also served to show the Appellant's true motive for the stabbing which the defensive theory had placed squarely in dispute. The victim testified that the Appellant stabbed him out of long term jealousy and animosity toward Crystal Whiteside and that it all came to a head because of time he spent with her that day for their daughter's birthday. The Appellant's defensive theory was that she did not act from the jealousy motive but only to defend herself from sexual assault. Clearly a pattern of animosity toward Ms. Whiteside both before and after the stabbing made the motive of jealousy more probable and the defensive theory of self-defense unrelated to Jennings' relationship with Whiteside less probable.

**Cheleste Jennings and Jerry Jennings**

After the stabbing the Appellant broke into the house of Antonio Jennings' sister, Cheleste Jennings, and vandalized her car. (RR9-9, 63, 65). The Appellant admitted that she had done so to Angela Gomez. (RR10-66).

Also after the commission of the offense, the Appellant vandalized the car belonging to Antonio Jennings' brother, Jerry Jennings. She admitted that she had slashed his tires and offered to reimburse him for his loss. (RR9-137, 138).

Neither Cheleste nor Jerry Jennings had experienced any problem with the Appellant prior to the stabbing. (RR9-65, 134). Her anger once again reasonably tended to make her defensive theory less probable.

**Prior Conviction in Virginia**

The indictment alleged that at the time of the assault the Appellant and Antonio Jennings were in a dating relationship as that term is defined in Section 71.0021(b) of the *Texas Family Code*. See Section 22.02(b)(1), *Texas Penal Code*. That section of the Family Code defines "dating relationship" as a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. In determining whether such a relationship exists the code

provides that the length of the relationship, the nature of the relationship, and the frequency and type of interaction between the persons involved. It also states that a casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship.

It was thus incumbent, in order to prove an element of the offense charged in the indictment, that the Appellant and Mr. Jennings were in such a dating relationship. The evidence showed that they had become intimate within three or four weeks after they met (RR8-61, 64) and moved in together shortly thereafter. The Appellant's young son and niece also resided with them. (RR8-64, 65). In exploring the nature of their relationship as more than a casual acquaintanceship or ordinary fraternization, the State asked the following:

> "Q. And at some point did you end up caring for the defendant's children?
>
> A. Yes, ma'am.
>
> Q. Okay, how did that come to be?
>
> A. She went to see a—her probation officer." (RR8-67)

At that point the Appellant objected and the trial court took up the matter outside the presence of the jury. The Appellant advised the court

that she believed this was leading to proof of extraneous conduct involving assaultive behavior and her prior conviction. (RR8-67).

The State responded by assuring the court that it had no intention of offering proof of the prior conviction or the underlying facts of that conviction, but the fact that the victim cared for the Appellant's children for an extended time during her absence as part of the context of the offense and relevant in order to prove the necessary elements of that offense. (RR8-67, 68).

The trial court overruled the Appellant's objection. (RR8-68). Then, in the presence of the jury the State asked Mr. Jennings if he had been the sole caretaker of the Appellant's children for a period of at least two months and that he continued to reside in the residence with those children during her absence. (RR8-68, 69). There was no further mention of why the Appellant was absent. This testimony was relevant and probative on the issue of the type and nature of the relationship between the Appellant and the victim and that the relationship was neither casual nor ordinary. To the extent that the brief mention before the jury that the Appellant had gone to visit her probation officer constitutes an extraneous matter under Rule 404(b) it was clearly and

reasonably relevant to an essential element of the offense charged and reasonably tended to make that element more probable.

**Conclusion**

The ruling of the trial court admitting the evidence complained of is certainly within the scope of reasonable disagreement and was not an abuse of discretion. The Appellant relied upon the defensive theory of self-defense and placed her motive for the offense directly in question. All of the evidence the admission of which is complained of reasonably and logically made her defensive theory less probable and her motivation as stated by the victim more probable. It was thus admissible under Rule 404(b).

## Second Issue on Appeal (Appellant's Points of Error Nine through Fifteen)

Did the trial court abuse its discretion in admitting the same evidence over the Appellant's objection that its probative value was substantially outweighed by the danger of unfair prejudice as prohibited by Rule 403 of the *Texas Rules of Evidence?*

### Standard of Review

The standard of review is the same as in the first issue on appeal.

*Application and Analysis*

Rule 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. The rule assumes the admissibility of all relevant evidence and such evidence may be excluded only when the probative value is substantially outweighed by the unfair prejudice. *Mozon v. State*, 991 S.W.2d 841, 847 (Tx. Cr. App. 1999).

In examining the trial court's ruling under Rule 403, four factors must be considered: (1) how compellingly the evidence makes a fact of consequence more or less probable; (2) the potential for the evidence to impress the jury the jury in and irrational but indelible way; (3) the time during the trial that the State requires to develop the evidence; and (4) the State's need for the evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tx. Cr.App. 2002).

**Compelling?**

Does the evidence compellingly serve to make a fact of consequence more or less probable? The Appellant contends that it was not relevant to any issue in the case. This is simply incorrect. She

placed her motive squarely in issue by relying throughout the trial upon the defensive theory of self-defense. Thus whether or not she stabbed Antonio Jennings in self-defense during the course of a sexual assault or whether she intentionally and knowingly did so out of jealous anger became the crucial issue in the case. In fact, she never contested the stabbing at all but only her motive for it. The evidence that she was jealous and harbored animosity as a result of Mr. Jennings continued contact with Crystal Whiteside, the mother of his children, a revealed by her actions before and after the stabbing were certainly compelling as to that issue.

**Irrational, Indelible Impression?**

The Appellant says that a "seemingly unending parade" of extraneous acts must have created an irrational impression upon the thought processes of the jury. The trial court not only charged the jury fully upon the law of self-defense as relied upon by the Appellant, it also instructed the jury that it was not to consider any extraneous offenses unless it first found beyond a reasonable doubt that the Appellant committed those offenses, and even then only in determining motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or to rebut a defensive theory, and for no other

purpose. (CR-55). The Appellant had no objections to the charge. (RR12-4).

It must be presumed that the jury followed the trial court's instructions. *Gamez v. State*, 737 S.W.2d 315, 324 (Tx.Cr.App. 1987). There is nothing in the record to indicate otherwise.

The evidence was admitted by the trial court because it was directly and compellingly germane to the motive and to the defensive issue. The jury was instructed as to that purpose. It certainly did not impress the jury in any irrational way.

**Time Necessary**

The Appellant contends that the time spent on the extraneous conduct evidence was such that it could have "distracted the jury from consideration of the indicted offense". Her defensive theory, however, arguably made that evidence part and parcel of that offense. She did not claim that she did not stab Mr. Jennings, but only that she did so for a different reason than he claimed, in self-defense. It was necessary for the State to meet those allegations in order to prove the charged offense. While several witnesses testified concerning these matters, their testimony relevant and highly probative of the issues at hand. Contrary to the Appellant's assertions it cannot be said that the time

spent on those matters was in any respect disproportionate to that involving the facts of the charged offense.

**State's Need**

The Appellant concedes that the trial court found that the State needed the evidence in question. She claims, however, that this is not the case because "the evidence was clear that Hampton stabbed Jennings". (Appellant's Brief at 33). She is correct in that assertion, but her argument is disingenuous. Without doubt the evidence that the Appellant stabbed Antonio Jennings was not only clear but uncontested. But it certainly does not follow that the State did not need the other evidence. To the contrary that admission, coupled with the Appellant's claim of self-defense, made that testimony vitally necessary. The only persons present at the time of the offense were the Appellant and the victim. The victim said that the Appellant stabbed him in a fit of jealous rage and long standing resentment of his relationship with Crystal Whiteside. The Appellant claimed that the victim was sexually assaulting her and she was only defending herself when she stabbed him. That became the only real issue in the case. The need of the State to show the Appellant's history of jealousy and resentment arising from

Mr. Jennings continued contact with Whiteside and her actions afterward in keeping with that jealous anger was indeed grave.

The decision of the trial court to admit the evidence in question over the Appellant's Rule 403 objection was well within the scope of reasonable disagreement and was not an abuse of discretion.

# PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 4,223 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, Richard E. Wetzel , Counsel for Appellant, electronically addressed to him at <u>wetzel_law@1411west.com</u> on this 20th day of January, 2015.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney